REED-CUSTER COMMUNITY UNIT SCHOOL DISTRICT No. 255-U *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. THE CITY OF WILMINGTON, Defendant-Appellant and Cross-Appellee.

Third District   No. 3—92—0580

Opinion filed November 8, 1993.—Modified on denial of rehearing January 19, 1994.

Jack B. Teplitz, of Peoria, and Law Offices of John P. Edmonds, Ltd., of Chillicothe (John P. Edmonds, of counsel), for appellant.

Richard T. Petesch and Donna K. Metzler, both of Law Offices of Stuart L. Whitt, of Aurora (Stuart L. Whitt, of counsel), for appellees.

JUSTICE LYTTON delivered the opinion of the court:

The City of Wilmington (City) adopted ordinances establishing a tax increment finance (TIF) district. Plaintiffs, various local taxing districts, brought suit challenging the validity of the ordinances.

Thereafter, the circuit court declared the ordinances void and permanently enjoined the City from further implementing the TIF project and plan. The City brought this appeal. We affirm.

The primary issue on appeal involves the status of the subject land, *i.e.*, whether the land is "vacant" and therefore eligible for assistance under the Tax Increment Allocation Redevelopment Act (Ill. Rev. Stat. 1989, ch. 24, par. 11—74.4—1 *et seq.*).

On February 15, 1991, Reed-Custer Community Unit School District No. 255-U, Braidwood Park District, Reed Township, Fossil Ridge Library District, Braidwood Fire Protection District, and Reed Township Mosquito Abatement District (collectively referred to as plaintiffs) filed a complaint for injunctive and declaratory relief against the City of Wilmington. The subject of the complaint was property known as Shadow Lakes, which was annexed to the City of Wilmington in 1987. Plaintiffs asserted that the City's ordinances violated the Real Property Tax Increment Allocation Redevelopment Act (Act) (Ill. Rev. Stat. 1977, ch. 24, par. 11—74.4—1 *et seq.*), because the finding of the city council that Shadow Lakes was vacant was clearly erroneous and without substantial support in fact. They alleged that they would be irreparably harmed by the improper and illegal diversion of tax revenues from their taxing districts. Plaintiffs sought an order declaring that the Wilmington redevelopment plan and project violated the Act, and an injunction preventing the City from implementing the project from selling bonds, undertaking obligations or making expenditures pursuant to the project.

Many of the significant facts in this case are undisputed. Shadow Lakes is situated within the corporate boundaries of the plaintiffs' taxing districts. On December 27, 1990, the Wilmington city council passed ordinance No. 1110, approving the "Tax Increment Redevelopment Plan and Project" (Project). On that date, the City also passed ordinance No. 1111, designating Shadow Lakes as redevelopment project area number 1, and ordinance No. 1112, adopting tax increment financing and approving the plan and project for Shadow Lakes.

The evidence indicated that Shadow Lakes was an area of approximately 606 acres, located in Will County, Illinois. About 40 years ago, strip-mining operations ceased, and the area became known as a place for motorcycle gangs and as a dumping ground for automobiles and other debris. Eventually, the Illinois Environmental Protection Agency (EPA) brought an action to enforce environmental restrictions.

Prior to 1987, several attempts were made to develop Shadow Lakes. These efforts failed. In 1989, a partnership named Shadow

Lakes Properties purchased the land. An impediment to the development of the property was the need to construct a sewer main and two lift stations in order to connect Shadow Lakes with the City of Wilmington. In the interim, sewage was being collected in holding tanks and trucked to the Wilmington sewage treatment plant. These tanks are considered temporary by the EPA, and the EPA has placed the City on a restricted list for operating in excess of capacity. The tank-and-haul system has never been considered a permanent solution for Shadow Lakes' sewage needs. Accordingly, the City passed the TIF ordinances mentioned above to finance the necessary improvements.

At the time that the City passed its TIF ordinances, there existed the following structures and vehicles on the property: a sales office, a beach house, a maintenance building, 12 homes, 62 park model recreational vehicles, and 51 other recreational vehicles. The "park models" are trailer-type vehicles, up to 400 square feet in size, with the corners sometimes sitting upon cement blocks. The parties disagree as to the significance of these structures and vehicles as they relate to the issue of vacancy.

The circuit court found for the plaintiffs, declaring the City's plan and ordinances invalid under the Act, and permanently enjoined the City from further implementation of its plan and ordinances. The trial judge found that Shadow Lakes was not eligible under the Act because it did not constitute "vacant land."

On appeal, the City raises three interrelated issues regarding the eligibility of the Shadow Lakes property for TIF assistance: (a) whether the trial judge erred in finding that the Shadow Lakes area was not vacant, (b) whether the plaintiffs failed to meet their burden of overcoming the presumed validity of factual findings of the City's ordinances, and (c) whether the trial judge erred in substituting its judgment for the finding of the city council that Shadow Lakes was vacant.

In the landmark opinion of *People ex rel. City of Canton v. Crouch* (1980), 79 Ill. 2d 356, 403 N.E.2d 242, the Illinois Supreme Court reviewed the history, purpose and procedures of the Tax Increment Allocation Redevelopment Act, saying:

> "The Act became effective January 10, 1977. Its stated purpose is to eradicate blighted conditions and prevent new ones from occurring. The intent of the Act is to redevelop blighted areas so as to prevent the further deterioration of the tax bases of these areas and to remove the threat to the health, safety, morals and welfare of the public which blighted conditions present.

(Ill. Rev. Stat. 1977, ch. 24, pars. 11—74.4—2(a), (b).) The General Assembly declared:

'[I]ncremental tax revenues derived from the tax rates of various taxing districts in redevelopment project areas for the payment of redevelopment project costs is of benefit to said taxing districts for the reasons that taxing districts located in redevelopment project areas would not derive the benefits of an increased assessment base without the benefits of tax increment financing \*\*\*.' Ill. Rev. Stat. 1977, ch. 24, par. 11—74.4—2(c)." *Crouch*, 79 Ill. 2d at 360.

Once a TIF plan and project is authorized, a municipality can use a number of powers granted to it under the Act to improve a blighted area and implement a plan. *Crouch*, 79 Ill. 2d at 360-62; Ill. Rev. Stat. 1991, ch. 24, pars. 11—74.4—4, 11—74.4—7.

Not all land is eligible for TIF financing. To qualify as a "blighted area," the land must be either (a) improved land meeting at least five statutory criteria, or (b) vacant land which impairs the growth of taxing districts due to the presence of at least two statutory criteria. (Ill. Rev. Stat. 1991, ch. 24, par. 11—74.4—3(a).) In this case, the City has maintained that Shadow Lakes was eligible under the "vacant land" provision of the statute.

For purposes of implementing section 11—74.4—3(a), the statute provides a definition of "vacant land":

"(v) As used in subsection (a) of Section 11—74.4—3 of this Act, 'vacant land' means any parcel or combination of parcels of real property without industrial, commercial and residential buildings which has not been used for commercial agricultural purposes within 5 years prior to the designation of the redevelopment project area, unless such parcel is included in an industrial park conservation area or such parcel has been subdivided." Ill. Rev. Stat. 1991, ch. 24, par. 11—74.4—3(v).

The statute does not address the issue of whether the subject property must be entirely or just substantially bereft of buildings, in order to fall within the parameters of section 11—74.4—3 of the Act. The term "vacant" has no single, precise meaning. In certain contexts, the term has been interpreted to mean "entirely empty \*\*\* lack of animate or inanimate objects." (*Myers v. Merrimack Mutual Fire Insurance Co.* (1986), 788 F.2d 468, 471, citing *Schuermann v. Dwelling House Insurance Co.* (1896), 161 Ill. 437, 43 N.E. 1093; *Cavin v. Charter Oak Fire Insurance Co.* (1978), 66 Ill. App. 3d 808, 384 N.E.2d 441; *Gash v. Home Insurance Co.* (1910), 153 Ill. App. 31.) However, "vacant" need not necessarily mean entirely lacking in

contents. A house in which no one has lived for several months may be deemed vacant, despite the presence of a few items, such as an old brass bed, old straw mattress and a chair. (*Myers v. Merrimack Mutual Fire Insurance Co.*, 788 F.2d at 472, citing *Jelin v. Home Insurance Co.* (1934), 72 F.2d 326.) In *City of Chicago v. Farwell* (1918), 286 Ill. 415, 121 N.E. 795, the Illinois Supreme Court held that a jury instruction was "faultless" in defining "real estate" as "vacant land, together with all buildings and structures thereon, and the machinery, apparatus and equipment upon the land and in the buildings." *Farwell*, 286 Ill. at 425.

Under the facts of this case, we need not decide whether the present statute requires substantial or complete absence of buildings. Within his memorandum of decision, the trial judge accepted the interpretation most favorable to the defendant City:

> "The statute does not require the area to be totally and completely without any buildings or structures, but rather to be substantially vacant."

Nonetheless, the trial judge found that the plaintiffs had met their burden of proving that the property was not vacant.

> "[B]ased upon the evidence in this case, the Court finds that Shadow Lakes, on December 27, 1990, consisted of land containing both residential and commercial buildings in a substantial number, and was not vacant within the meaning of the statute."

■ We agree. As of December 27, 1990, Shadow Lakes was improved with a permanent sales office, a beach house, maintenance and storage buildings, and 12 permanent homes. The sales office alone cost approximately $200,000 to build in 1989. Also, while their significance under the statute is unclear, it should be noted that 62 park model recreational vehicles and 51 other recreational vehicles were also located upon the land.

The City argues that Shadow Lakes is nevertheless vacant when all 605 acres are considered "on the whole." We consider this approach to be flawed in two aspects. First, the phrase "on the whole" is not found within the applicable statutory provisions. (Ill. Rev. Stat. 1991, ch. 24, pars. 11—74.4—3(a), (v).) Rather, the phrase is utilized in a different, inapplicable provision, pertaining to the requirements of the municipality's redevelopment plan. (Ill. Rev. Stat. 1991, ch. 24, par. 11—74.4—3(n).) Second, in its ordinances, the City designated the parameters of the subject property. The City chose to include the sites containing the sales office, beach house, maintenance and storage buildings, and 12 homes, within the purportedly vacant land eligible

for TIF assistance. Clearly the trial judge did not err in finding that the land was not vacant.

■ We also disagree with the City's other contentions, *i.e.*, that plaintiffs failed to overcome the presumed validity of the City's ordinances and that the trial judge improperly substituted his judgment for that of the city council. The City appears to confuse the effect of a presumption with the standard of judicial review in the circuit court. Once a party introduces sufficient evidence to rebut a presumption, the "bubble bursts" and the presumption disappears. (*In re Estate of Kline* (1993), 245 Ill. App. 3d 413, 424, 613 N.E.2d 1329.) In this case, a presumption existed that Shadow Lakes was vacant, based upon the findings contained within the city council's ordinances. Once the plaintiffs introduced evidence to the contrary, the presumption vanished from the case. (*Estate of Kline*, 245 Ill. App. 3d at 425.) Thereafter, the trial judge determined that plaintiffs met their burden of proof. Specifically, the judge's decision stated:

> "In deciding this action, the Court must give, and has given, due deference to the ordinances of the City, along with the findings in those ordinances. Such findings must be overcome by clear and convincing evidence ***. Based upon the evidence in this case, the Court finds that Shadow Lakes, on December 27, 1990, consisted of land containing both residential and commercial buildings in a substantial number, and was not vacant within the meaning of the statute."

On appeal, a trial court's findings will not be set aside unless clearly contrary to the manifest weight of the evidence. (*Greater Peoria Sanitary & Sewage Disposal District v. Hermann* (1987), 153 Ill. App. 3d 398, 402, 505 N.E.2d 769.) After reviewing the record, we conclude that plaintiffs overcame the presumed validity of the City's factual findings by clear and convincing evidence, the trial judge properly applied the law, and the judge's decision was not against the manifest weight of the evidence.

In light of our resolution of the foregoing issues, we need not address the issues raised on the cross-appeal.

For the reasons stated, the judgment of the trial court is affirmed.

Affirmed.

BRESLIN and SLATER, JJ., concur.