HENRY COUNTY BOARD *et al.*, Plaintiffs-Appellees, v. THE VILLAGE OF ORION, Defendant-Appellant.

Third District No. 3—95—0455

Opinion filed March 29, 1996.

John Ames (argued), of Orion, for appellant.

Ted J. Hamer, State's Attorney, of Cambridge (John X. Breslin and Judith Z. Kelly (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellees.

JUSTICE MICHELA delivered the opinion of the court:

Plaintiff Henry County Board (County Board) and co-plaintiffs Orion Community Unit District 223, Western District Library, Orion Community Fire Protection District, Western Township, and the Board of Trustees of Blackhawk College filed suit against defendant Village of Orion (Orion). Orion adopted ordinances creating a real property tax increment financing district (TIF district) and an attendant redevelopment plan and project pursuant to the Tax Increment Allocation Redevelopment Act (the Act) (65 ILCS 5/11—74.4—1 *et seq.* (West 1994)). The County Board sought equitable relief to declare Orion's ordinances void and enjoin Orion's implementation of the TIF district and execution of its redevelopment project and plan. Following a bench trial, the court found in favor of the County Board. Orion appeals. We affirm.

The Act enables municipalities to eliminate present and future blighted conditions from within their boundaries by diverting incremental real property tax revenues from taxing districts, *e.g.*, school, park, sanitary and fire districts located within a proposed TIF district to fund public improvements. 65 ILCS 5/11—74.4—2(a), (c), 11—74.4—3(t) (West 1994). The tax bases of a municipality and its

taxing districts are enhanced through encouraging private investment within the proposed TIF district. 65 ILCS 5/11—74.4—2(b) (West 1994).

A proposed TIF district may be composed of blighted improved or blighted vacant realty, or of improved realty comprising a conservation area or as a combination blighted/conservation area. 65 ILCS 5/11—74.4—3(n), (a) (West 1994). To qualify as blighted improved property, a combination of five or more of the following characteristics must exist:

> "age; dilapidation; obsolescence; deterioration; illegal use of individual structures; presence of structures below minimum code standards; excessive vacancies; overcrowding of structures and community facilities; lack of ventilation, light or sanitary facilities; inadequate utilities; excessive land coverage; deleterious land use or layout; depreciation of physical maintenance; lack of community planning, [which] is detrimental to the public safety, health, morals or welfare." 65 ILCS 5/11—74.4—3(a) (West 1994).

Blighted vacant realty qualifies as such if:

> "(1) a combination of 2 or more of the following factors [is present]: obsolete platting of the vacant land; diversity of ownership of such land; tax and special assessment delinquencies on such land; flooding on all or part of such vacant land; deterioration of structures or site improvements in neighboring areas adjacent to the vacant land, or (2) the area immediately prior to becoming vacant qualified as a blighted improved area, or (3) the area consists of an unused quarry or unused quarries, or (4) the area consists of unused railyards, rail tracks or railroad rights-of-way, or (5) the area, prior to its designation, is subject to chronic flooding which adversely impacts on real property in the area and such flooding is substantially caused by one or more improvements in or in proximity to the area which improvements have been in existence for at least 5 years, or (6) the area consists of an unused disposal site, containing earth, stone, building debris or similar material, which were removed from construction, demolition, excavation, or dredge sites, or (7) the area is not less than 50 nor more than 100 acres and 75% of which is vacant, notwithstanding the fact that such area has been used for commercial agricultural purposes within 5 years prior to the designation of the redevelopment project area, and which area meets at least one of the factors itemized in provision (1) of this subsection (a) ***." 65 ILCS 5/11—74.4—3(a) (West 1994).

A conservation area is an improved area in which 50% or more of the structures equal or exceed 35 years of age. 65 ILCS 5/11—74.4—3(b) (West 1994). Conservation areas are not blighted, but because of

the presence of three or more of the following factors, the area may become blighted:

> "dilapidation; obsolescence; deterioration; illegal use of individual structures; presence of structures below minimum code standards; abandonment; excessive vacancies; overcrowding of structures and community facilities; lack of ventilation, light or sanitary facilities; inadequate utilities; excessive land coverage; deleterious land use or layout; depreciation of physical maintenance; lack of community planning, [which] is detrimental to the public safety, health, morals or welfare." 65 ILCS 5/11—74.4—3(b) (West 1994).

In 1993, factors ranging from an inadequate sewer system, a perceived slow growth in economic development and a steadily declining population caused Orion to adopt ordinances authorizing a TIF district. A substantial portion of Orion was designated as the proposed TIF district and an expert determined the district qualified as a combination blighted and conservation area. Orion adopted ordinances authorizing the district and a redevelopment project and plan. The County Board filed suit contending that Orion's ordinances violated the Act. On May 9, 1995, the trial court issued a written opinion finding that Orion's ordinances violated the Act and enjoined Orion from implementing its ordinances and collecting funds. Orion filed no post-trial motions. The trial court entered its final judgment on May 23, 1995, and Orion filed a timely notice of appeal.

■ Orion argues the trial court erroneously found the County Board proved by clear and convincing evidence that the proposed TIF district was neither blighted nor a conservation area. Challenging Orion's ordinances required the County Board to overcome their presumptive validity by clear and convincing evidence. *Castel Properties, Ltd. v. City of Marion*, 259 Ill. App. 3d 432, 631 N.E.2d 459 (1994). Clear and convincing evidence is that "quantum of proof that leaves no reasonable doubt in the mind of the fact finder as to the truth of the proposition [stated]." *Bazydlo v. Volant*, 164 Ill. 2d 207, 213, 647 N.E.2d 273, 276 (1995). The fact finder's determinations will not be disturbed unless clearly contrary to the manifest weight of the evidence. *Reed-Custer Community School District No. 255-U v. City of Wilmington*, 253 Ill. App. 3d 503, 625 N.E.2d 381 (1993). The decision of the trial court is against the manifest weight of the evidence if a review of the record clearly establishes that the decision opposite to the one reached by the trial court was the proper result. *In re Knapp*, 231 Ill. App. 3d 917, 596 N.E.2d 1171 (1992). Thus, our inquiry is whether the trial court's decision that the County Board proved by clear and convincing evidence that the TIF district was neither blighted nor a conservation area is clearly contrary to the manifest weight of the evidence.

Eligibility for the Act's benefits rests upon a municipal determination that the proposed TIF district qualifies using the statutory factors enumerated above. In the case at bar, this determination was aided by both parties' reliance on guidelines promulgated by the Illinois Department of Revenue which, although intended to give guidance on sales tax increment financing districts, has an equal applicability to real property tax increment financing districts. See *Wheeling v. Exchange National Bank*, 213 Ill. App. 3d 325, 333, 572 N.E.2d 966, 971 (1991) (tacitly approving the guidelines' use in real property tax increment financing cases). As the Department of Revenue guidelines suggest, qualifying statutory factors should be present to a meaningful extent and reasonably distributed throughout the proposed TIF district so that reasonable people will conclude that public intervention is necessary.

The trial court's order demonstrates it found that, while isolated parcels of improved property were blighted, the TIF district nonetheless did not qualify as a blighted and conservation area. For example, the trial court found Orion's characteristics study relied on loose or missing shingles, gravel drives, grass growing through the cracks in a driveway, surface cracking in driveways and sidewalks to establish the manifest presence of blighting factors within the proposed TIF district. The trial court further found 12 new building permits had issued for roofs, gutters and siding on properties Orion found blighted. Additionally, the trial court found the evidence insufficient to support a finding of inadequate utilities within the TIF district justifying the use of potential TIF revenues for a new sewer system. Finally, the accuracy of the characteristics study upon which Orion relied was called into question as testimony revealed various parcels of realty were either omitted or counted twice.

■ Our review of the record, including the photographic and demonstrative evidence, comports with the trial court's findings. For example, new building was occurring within the proposed TIF district, signalling economic development. Further, photographs of the majority of the improved property indicate it was in routine disrepair common to many communities. While expert testimony clarified whether this disrepair statutorily qualified as "deterioration," "dilapidation" or "depreciation," we find the trial court assessed the weight of the experts' testimony and concurred with the County Board's expert view. We find no basis in the record to overturn the trial court's finding that the statutory criteria enumerated in the Act were not meaningfully present to qualify the improved property located within the proposed TIF district as a blighted or conservation area.

Orion also challenges the trial court's finding that financing a new sewer system as a redevelopment project public improvement did not substantially benefit the proposed TIF district. Specifically, the trial court found that only three property owners who had complained of poor sewer service were located within the proposed TIF district. As we earlier stated, the trial court's findings will not be set aside unless clearly contrary to the manifest weight of the evidence. *Reed-Custer*, 253 Ill. App. 3d 503, 625 N.E.2d 381.

Orion agrees realty located outside of the proposed TIF district will benefit by a new sewer system financed through TIF revenues. However, Orion argues its ordinances are nevertheless valid because the sewer project serves a valid public purpose, *i.e.*, the prevention of future blighted conditions. We do not dispute that Orion's selection of a public improvement to prevent future blighted conditions is a proper public purpose. See *People ex rel. City of Urbana v. Paley*, 68 Ill. 2d 62, 73, 368 N.E.2d 915, 920 (1977). However, this reasoning is not dispositive of the statutory requirement that a proposed improvement shall substantially benefit the TIF district. 65 ILCS 5/11—74.4—4(a) (West 1994).

In the instant case, Orion sought to finance a new sewer system despite a feasibility study that determined no more than 4 of the 300 parcels of improved property within the TIF district were blighted because of inadequate utilities. Accordingly, the trial court's finding that the sewer project did not substantially benefit the proposed TIF district is supported by the record and not clearly contrary to the manifest weight of the evidence.

Orion next argues the trial court erroneously relied on the subjective observations of the County Board's expert witness to the exclusion of the objective criteria Orion generated to conclude the proposed TIF district was both blighted and a conservation area. At trial, Thomas N. Jacob testified he was hired by Orion to determine the feasibility of a TIF district. Jacob testified he and his employees conducted a field survey and noted the presence of qualifying characteristics. This data was tallied and a matrix was developed ultimately leading to Jacob's conclusion that the proposed TIF district qualified as blighted and a conservation area. Jacob's conclusions were memorialized in the "Orion TIF District Report of Characteristics" and formed the foundation for the adoption of Orion's ordinances.

Theodore Johnson testified as an expert for the County Board. Johnson testified he used the raw data generated by Jacob's original field study and performed site visits to also develop a matrix to analyze the presence of the statutory characteristics in the proposed

TIF district. Johnson testified that the presence of the qualifying characteristics in Jacob's report was significantly higher than the number of qualifying characteristics gleaned from his analyses.

Upon a review of the record, we do not agree with Orion that Johnson testified to his subjective observations of the sites located in the proposed TIF district and ignored the empirical data he accumulated in preparation for trial. The record demonstrates that both Johnson and Jacob testified to the statutory criteria they observed within the proposed TIF district. Their views diverged on whether those factors were, as the Department of Revenue guidelines suggest they should be, present to a meaningful extent and reasonably distributed throughout the proposed TIF district. Accordingly, we find no error.

■ Orion next appeals the trial court's finding that the proposed TIF district did not contain vacant land. The Act defines vacant land as:

> "any parcel or combination of parcels of real property without industrial, commercial, and residential buildings which has not been used for commercial agricultural purposes within 5 years prior to the designation of the redevelopment project area, unless the parcel is located in an industrial park conservation area or the parcel has been subdivided." 65 ILCS 5/11—74.4—3(v) (West 1994).

We note none of the parcels termed vacant were subdivided according to the testimony of the chief deputy recorder of Henry County.

Orion first argues that property known as Augie and Earls is vacant and lies within an industrial park conservation area. 65 ILCS 5/11—74.4—3(d), (e) (West 1994). We find this parcel of realty does not qualify as vacant because it contains a commercial building, an on-going Chevrolet car dealership. See *Reed-Custer*, 253 Ill. App. 3d at 506-07, 625 N.E.2d at 384-85. As a threshold matter, since the property is not vacant, we need not decide whether the property qualifies as an industrial park conservation area.

Orion argues the trial court erred when it found property known as Orion Investments was not vacant. Orion contends this property qualifies as blighted vacant property because of an abandoned railroad right-of-way. 65 ILCS 5/11—74.4—3(a)(4) (West 1994). We agree with the trial court that, although this parcel contains a railroad right-of-way, it also contains residential homes and, therefore, the property is not vacant.

Orion also claims that the Skladany Trust property qualifies as vacant realty because of chronic flooding (65 ILCS 5/11—74.4—3(a)(5) (West 1994)) and it is located within an industrial park conservation

area. However, testimony adduced at trial showed no indication of chronic flooding as evidenced by flood plain maps and, further, the seasonal planting of crops on this property belied the occurrence of chronic flooding. Thus, we find the property does not qualify as vacant and we need not reach the question of whether the property qualifies as an industrial park conservation area.

Orion next claims the parcel of realty known as the Skladany and Taets property is vacant because of obsolete platting and diversity of ownership (65 ILCS 5/11—74.4—3(a)(1) (West 1994)) and it is located within an industrial park conservation area. Testimony established Orion relied on the names of two owners as conclusive of diversity ownership without investigating the possibility of joint ownership. We find the record does not support that Orion established obsolete platting. The County Board successfully challenged the vacancy of the Skladany and Taets property and, again, we do not reach the question of whether this property was an industrial park conservation area.

Orion next argues the trial court erred in finding the County Board demonstrated four parcels of realty were not vacant because they were actively farmed. Orion does not dispute these parcels were farmed but argues the County Board did not demonstrate they were farmed for commercial agricultural purposes. 65 ILCS 5/11—74.4—3(v) (West 1994).

At trial, the County Board defined commercial agricultural purposes through the unchallenged lay opinion of an Orion farmer, Robert DeBaille, who testified commercial farms grow crops for sale, resale or livestock production. However, the County Board presented no evidence on whether crops or livestock were presently being sold or were sold on these particular parcels of realty within the past five years. Orion now urges us to recognize a definition of commercial agricultural purposes utilizing factors such as profit and acreage.

The Act does not define "commercial agricultural purposes," but when a statutory term is not defined, it must be given its ordinary and popularly understood meaning. *American Family Mutual Insurance Co. v. Baaske*, 213 Ill. App. 3d 683, 686, 572 N.E.2d 308, 309 (1991). We agree with Orion that commercial agricultural purposes must perforce include a remunerative element. However, we decline to impose an additional requirement of acreage to further define commercial agricultural purposes, as any entrepreneur may parlay any amount of realty into a commercial agricultural venture.

In the instant case, the record discloses that even under the definition the County Board used as evidenced by DeBaille, the County Board did not show by clear and convincing evidence that the parcels

of realty termed vacant were used for commercial agricultural purposes, *i.e.*, a remunerative exchange between a seller and a buyer involving the goods produced upon the realty. Hence, the County Board did not clearly and convincingly demonstrate these parcels were not vacant.

However, we do not find this error reversible as these were four parcels of realty among at least seven vacant parcels and over 300 improved parcels of realty composing the proposed TIF district. Accordingly, the trial court's finding that the above parcels did not qualify as vacant is supported by the record.

Next, Orion complains the trial court erred in finding the proposed TIF district was not composed of contiguous parcels of realty. Orion contends the standard to review the trial court's finding of contiguity is *de novo*, as this is a matter of statutory construction and thus a question of law. *Village of South Elgin v. City of Elgin*, 203 Ill. App. 3d 364, 367, 561 N.E.2d 295, 297 (1990). We find, however, that the issue of contiguity is a mixed question of law and fact. *In re Annexation of Certain Territory to the Village of Chatham*, 245 Ill. App. 3d 786, 794, 614 N.E.2d 1278, 1284 (1993). Thus, to the extent that factual disputes are present, the trial court's decision will not be disturbed unless contrary to the manifest weight of the evidence. *In re Petition for Annexation of Certain Property to the Village of Plainfield*, 267 Ill. App. 3d 313, 321, 642 N.E.2d 502, 507 (1994).

■ Contiguity is not defined by the Act; however, when interpreting a statute, courts must ascertain the intent of the legislature using the language of the statute itself. *McCuen v. Peoria Park District*, 245 Ill. App. 3d 694, 697, 615 N.E.2d 764, 767 (1993). When the statute is clear and unambiguous, courts will give the language its plain and ordinary meaning. *McCuen*, 245 Ill. App. 3d at 697, 615 N.E.2d at 767. Contiguity has long been defined in annexation cases as tracts of land that touch or adjoin one another in a reasonably substantial physical sense. *Western National Bank v. Village of Kildeer*, 19 Ill. 2d 342, 352, 167 N.E.2d 169, 174-75 (1960). We conclude that this definition of contiguity is well suited to determine questions arising under the Act for several reasons. First, another definition may allow municipalities to circumvent the Act's legislative intent by creating TIF districts where physical eligibility may not otherwise exist. Second, imposing a substantial physical-touching requirement upon a municipality to establish contiguity ensures a municipality has properly constructed a TIF district and is legitimately reaping tax increment financing benefits under the Act.

In the instant case, the trial court found that streets were used as "strips" to create contiguity. In reviewing the trial exhibit of the

proposed TIF district, it is evident that these parcels, otherwise isolated from the hub of the district, are now joined to the district proper by utilizing the length of the streets that border or extend from the district. We find that the trial court's factual findings are not against the manifest weight of the evidence. We also find that, upon a *de novo* review of the record, the proposed TIF district fails to meet the statutory requirement of contiguity.

■ Orion next contends the trial court improperly found ordinance No. 93—23 violated the Act. The Act states a municipality may:

> "[m]ake payment in lieu of taxes or a portion thereof to taxing districts. If payments in lieu of taxes are made to taxing districts, those payments shall be made to all districts within a project redevelopment area on a basis which is proportional to the current collections of revenue which each taxing district receives from real property in the redevelopment project area." 65 ILCS 5/11—74.4—4(l) (West 1994).

Orion enacted ordinance No. 93—23 approving the TIF district and redevelopment plan on December 28, 1993. Paragraph (V)(I) of this ordinance directs Orion to make payments to its school district from TIF revenues for the lifetime of the TIF district. The County Board asserts ordinance No. 93—23 is invalid because paragraph (V)(I) provides Orion is to reimburse one, not all, of the affected taxing districts.

Testimony established Orion inserted paragraph (V)(I) because it was concerned that its school district may suffer from the real property tax revenues lost during the lifetime of the TIF district. Orion now argues on appeal that paragraph (V)(I) is valid because the Act allows a municipality to make payments to individual taxing districts without providing *pro rata* payments to all taxing districts. Orion relies on the following text:

> " 'Redevelopment project costs' mean and include the sum total of all reasonable or necessary costs incurred or estimated to be incurred, and any such costs incidental to a redevelopment plan and a redevelopment project. Such costs include, without limitation, the following:
>
> \* \* \*
>
> \*\*\* [a]ll or a portion of a taxing district's capital costs resulting from the redevelopment project necessarily incurred or to be incurred in furtherance of the objectives of the redevelopment plan and project, to the extent the municipality by written agreement accepts and approves such costs." 65 ILCS 5/11—74.4—3(q)(7) (West 1994).

Orion argues that because the phrase "taxing district" is used in the

singular possessive to sanction intergovernmental agreements between a sole taxing district and a municipality to replace capital costs, intergovernmental agreements between a municipality and a taxing district for payments in lieu of taxes are also sanctioned. Indeed, the record reflects that on August 1, 1994, Orion passed and approved ordinance No. 94—11 as an amendment to ordinance No. 93—23, allowing Orion to enter into intergovernmental agreements to provide assistance to the school district.

We are unpersuaded that the Act's municipal mandate to provide payments in lieu of taxes to all affected taxing districts is circumvented by the legislature's grammar in a separate statutory section. First, the legislature ensured that a municipality's payments in lieu of taxes should be made to all affected taxing districts when it used the following definition:

> " 'Payment in lieu of taxes' means those estimated tax revenues from real property in a redevelopment project area acquired by a municipality which according to the redevelopment project or plan is to be used for a private use which taxing districts would have received had a municipality not adopted tax increment allocation financing ***." 65 ILCS 5/11—74.4—3(m) (West 1994).

This language expressly recognizes that all taxing districts located within a proposed TIF district lose real property tax revenues under a tax increment financing plan. This differs from the language Orion relies upon, which merely pertains to repaying a single taxing district for capital costs it expended, not for its loss of real property tax revenues.

Additionally, although the Act states a redevelopment project cost may include a "[p]ayment in lieu of taxes" (65 ILCS 5/11—74.4—3(q)(9) (West 1994)), as we noted above the Act indicates all affected taxing districts should benefit by a municipal agreement to make such a payment. We therefore find no basis in the Act or in the arguments presented to hold that a municipality may make payments to a single taxing district in lieu of taxes cloaked as an intergovernmental agreement.

■ Orion's final argument claims the trial court erred when it found Orion did not provide notice to taxing districts of changes made to the proposed redevelopment plan and project prior to their adoption by ordinance No. 93—23. The record shows Orion complied with the Act's notice provisions and provided copies of the proposed redevelopment plan and project to the general public and Orion's affected taxing districts. However, this displayed redevelopment project and plan differed from the redevelopment plan and project actually adopted as ordinance No. 93—23. These differences include an

industrial park project and a 5% increase in monies private developers received as an incentive during the first four years of the life of the TIF district.

The Act states:

> "Prior to the adoption of an ordinance approving a redevelopment plan or redevelopment project, or designating a redevelopment project area, changes may be made in the redevelopment plan or project or area which changes do not alter the exterior boundaries, or do not substantially affect the general land uses established in the plan or substantially change the nature of the redevelopment project, without further hearing or notice, provided that notice of such changes is given by mail to each affected taxing district and by publication in a newspaper or newspapers of general circulation within the taxing districts not less than 10 days prior to the adoption of the changes by ordinance." 65 ILCS 5/11—74.4—5(a) (West 1994).

Orion argues the changes made prior to its adoption of ordinance No. 93—23 are *de minimis* and do not require additional notice. The County Board argues these changes necessitated that Orion provide notice to the affected taxing districts by mail and publication. We agree.

The Act provides if changes to a proposed redevelopment plan or project are made prior to their adoption, notice is required. Whether a municipality is to provide notice by mail, publication or public hearing depends upon whether the nature of the proposed change alters the exterior boundaries, affects the general land use or substantially changes the redevelopment project. 65 ILCS 5/11—74.4—5(a) (West 1994). We need not, however, decide if the changes made prior to the adoption of ordinance No. 93—23 fall within any of the categories listed above as it is undisputed Orion gave no notice of the changes to the taxing districts. We therefore find the trial court correctly decided that Orion failed to provide affected taxing districts with notice of changes to the proposed redevelopment plan and project within ten days of the adoption of ordinance No. 93—23.

The judgment of the circuit court of Henry County is affirmed.

Affirmed.

McCUSKEY and LYTTON, JJ., concur.