2020 IL App (3d) 190225

Opinion filed July 24, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE BOARD OF EDUCATION OF RICHLAND SCHOOL DISTRICT NO. 88A, an Illinois Public School District, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | Appeal No. 3-19-0225 |
| v. | ) | Circuit No. 18-CH-19 |
| | ) | |
| THE CITY OF CREST HILL, an Illinois Non-Home Rule Municipal Corporation, | ) ) | Honorable |
| | ) | John C. Anderson, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Presiding Justice Lytton concurred in the judgment and opinion.
Justice Holdridge specially concurred, with opinion.

_____

**OPINION**

¶ 1        Plaintiff filed a verified complaint challenging the tax increment financing (TIF) ordinances approved by defendant to establish the Weber Road Corridor TIF District (TIF District) under the Tax Increment Allocation Redevelopment Act (Act), 65 ILCS 5/11-74.4-1 *et seq.* (West 2016). Each party filed a cross-motion for summary judgment. The circuit court granted summary judgment for defendant. Plaintiff appeals.

¶ 2                                    I. BACKGROUND

¶ 3        The material facts are undisputed on appeal. Our resolution turns on an application of those

facts to the Act. Before beginning this task, a brief overview of the events culminating in the

establishment of the TIF District and the parties' arguments in the circuit court is appropriate.

¶ 4                            A. Establishment of the TIF District

¶ 5        In July 2017, defendant, the City of Crest Hill (City), requested and received a TIF

Redevelopment Plan and Project (Plan), prepared by Camiros, Ltd., under the Act. The Plan

included a conclusion that the proposed project area qualified as a redevelopment project area

because it was a "blighted area" under the Act. See *id.* § 11-74.4-3(a).[1]

¶ 6        Consistent with its obligation under section 11-74.4-5(b) of the Act, the City convened a

joint review board (JRB). See *id.* § 11-74.4-5(b). Section 11-74.4-5(b) states a JRB shall include:

> "a representative selected by each community college district, local elementary
>
> school district and high school district or each local community unit school district,
>
> park district, library district, township, fire protection district, and county that will
>
> have the authority to directly levy taxes on the property within the proposed
>
> redevelopment project area at the time that the proposed redevelopment project area
>
> is approved, a representative selected by the municipality and a public member."
>
> *Id.*

¶ 7        Further, section 11-74.4-5(b) states that a JRB reviews "(i) the public record, planning

documents and proposed ordinances approving the redevelopment plan and project and

(ii) proposed amendments to the redevelopment plan or additions of parcels of property to the

---

[1]Five statutory conditions for "blighted area" existed for the proposed project area's 339 acres of improved property. See 65 ILCS 5/11-74.4-3(a)(1) (West 2016). Three statutory conditions for "blighted area" existed for the proposed project area's 74 acres of vacant property. See *id.* § 11-74.4-3(a)(2), (3).

redevelopment project area to be adopted by the municipality." *Id.* The JRB then renders "an advisory, non-binding recommendation" on the redevelopment plan and project. See *id.*

¶ 8    Plaintiff, Board of Education of Richland School District No. 88A (School Board), selected Joe Simpkins as its representative on the JRB convened by the City in this case. The JRB met for the first time on October 10, 2017, in the City's council chambers, where a vote to approve the TIF District failed. Thus, the City's attorney suggested that the JRB "prepare a statement setting forth the reasons that [the] Plan either failed to comply with the Act or how the property did not meet the [TIF] eligibility requirements." The JRB continued the meeting until November 6, 2017, at which time the JRB reconvened and adopted a written statement that the TIF District

"not be created because the proposed Redevelopment Project Area does not meet the criteria for designation as a TIF District under the TIF Act. The [JRB] finds that [TIF] is not needed to encourage redevelopment within the Redevelopment Project Area, and the Redevelopment Project Area would experience redevelopment in the absence of [TIF]. The [JRB] finds that the creation of the *** [TIF] District would have a significant negative impact on the affected taxing districts, by the redirection of critical property taxes away from the affected taxing districts into a TIF fund for up to twenty three (23) years."

¶ 9    According to the transcript of the November 6, 2017, meeting of the JRB, the City's attorney asked for more "specificity on how [the TIF District] fails to meet the criteria." Regarding an obligation of the City to respond to the JRB's written statement, the City's attorney stated, "I'm not quite sure, frankly, what we're responding to because it sounds like *** the TIF [D]istrict doesn't meet the criteria, but there is no specificity as to which criteria aren't met and whether it is needed." In response, the School Board's attorney stated that if the City

3

"takes the position that it has met all its obligations with regard to [JRB] proceedings and it is going to go ahead any way [*sic*], it can do that *** [but] [t]he more conservative approach for the City would be to interact with the JRB as called for under the TIF [A]ct." Thereafter, the JRB voted to reconvene on the tentative date of December 4, 2017. Also on November 6, 2017, after receiving the JRB's written statement, the City held and adjourned a public hearing on the TIF District.

¶ 10     On November 20, 2017, the City's mayor, Raymond Soliman, wrote a letter to the School Board's JRB representative, Simpkins, asserting that the JRB did not cite "any specific challenges to the [P]lan" and any determination regarding the need for redevelopment was "a finding to be made by the municipality." In the letter, the mayor stated, "there is no reason for the City to meet with the JRB members on December 4th." According to the mayor, the JRB's written statement recommending a rejection of the TIF District was "legally deficient to the point that there [we]re no amendments the City c[ould] make to address the JRB objections." On this same day, the City unanimously approved three TIF ordinances establishing the TIF District.

¶ 11     When the members of the JRB arrived at Crest Hill City Hall on December 4, 2017, they were informed that the scheduled meeting was cancelled. The JRB conducted a meeting in the hallway of Crest Hill City Hall to affirm the recommendation to reject the TIF District.

¶ 12                              B. The School Board's Verified Complaint

¶ 13     On January 2, 2018, the School Board filed a verified complaint against the City, alleging that the three TIF ordinances approved by the City were invalid due to noncompliance with the statutory mandates of the Act. First, the School Board stated that the northwestern portion and the remainder of the TIF District were not contiguous, as required by section 11-74.4-4(a) (see *id.*

4

§ 11-74.4-4(a)). For context, we have included maps of the TIF District, with court notations, immediately below.

Map 1—TIF District Map



Map 2—Enlarged TIF District Map with Measurements and Highlighted Boundary

¶ 14    The School Board's complaint also alleged that the City failed to comply with certain procedural requirements of the Act. Specifically, the School Board alleged that (1) the City failed to provide administrative support to the JRB by publishing agendas and providing meeting space and administrative staff on October 10, November 6, and December 4, 2017; (2) the City improperly adjourned a public hearing on the TIF District before the JRB held its meeting scheduled for December 4, 2017; (3) the City failed to meet and confer with or resubmit a revised Plan to the JRB after receiving the written statement recommending a rejection of the TIF District;

and (4) the City improperly approved the ordinances establishing the TIF District before meeting and conferring with, resubmitting a Plan to, or allowing the December 4, 2017, meeting to be held by the JRB. As a result of the City's noncompliance with the Act, the School Board requested that the City be enjoined from advancing its TIF District.

¶ 15                    C. Cross-Motions for Summary Judgment

¶ 16       On December 21, 2018, the City and the School Board filed cross-motions for summary judgment. Thereafter, the parties filed responses and replies to the cross-motions for summary judgment. The parties' respective motions and responses are summarized separately below.

¶ 17              1. The City's Cross-Motion for Summary Judgment

¶ 18       In its motion for summary judgment, the City addressed the verified complaint's allegation that the TIF District was not contiguous, as required by section 11-74.4-4(a). The City pointed out that the School Board's allegation was based on "a map with the superimposed markings ['noncontiguous'] of an unknown person." In contrast, the City provided official Will County maps, which revealed that the northwestern portion of the TIF District, parcels B and C, share an 1175 foot common boundary along Weber Road that was sufficient during the annexation of parcel C. Likewise, the City relied on "jumping" the natural gas right of way for purposes of the prior annexation of parcel B, as it claimed was expressly allowed by section 7-1-1 of the Illinois Municipal Code (*id.* § 7-1-1). In addition, the City's motion for summary judgment addressed the allegations pertaining to the Act's procedural requirements.

¶ 19              2. The School Board's Motion for Summary Judgment

¶ 20       The School Board's motion for summary judgment addressed the issue of contiguity. Initially, the School Board rejected as irrelevant the City's contention that "there exists 1,175 linear

6

feet of common boundary establishing contiguity" between parcels B and C. The School Board contended parcels A and B, not parcels B and C, were noncontiguous under the Act.

¶ 21    Likewise, the School Board rejected the City's contentions with respect to past annexations. The School Board pointed out that annexations and TIF are governed by independent sections of the Illinois Municipal Code. In the School Board's view, the portion of the Illinois Municipal Code governing TIF did not allow the City to "jump" the 234.9 foot portion of the natural gas right-of-way to establish contiguity between parcels A and B. Again, the School Board argued that these parcels, not parcels B and C, were noncontiguous under the Act.[2]

¶ 22    In support of this argument, the School Board relied on the deposition testimony of Jeanne Lindwall, principal consultant for Camiros, Ltd., who prepared an eligibility study and the Plan for the City. Lindwall agreed that the contiguity of the northwestern portion of the TIF District (*i.e.*, parcels B and C) and the remainder of the TIF District (*i.e.*, parcel A) was "solely based" on the City's ability to "jump" the 234.9 foot portion of the natural gas right-of-way. Being even more precise, Lindwall agreed this was "the only way" to get contiguity to parcel B from parcel A. Sixty-six feet of Randich Road would also be included, but the "primary contiguity" came from the right-of-way. Lindwall admitted that she relied upon legal counsel's explanations of contiguity under "the annexation statute." She agreed that if her understanding of contiguity was incorrect, "there would be no contiguity" between parcels A and B. The School Board also argued that the City failed to comply with the Act's procedural requirements.

---

[2]City Administrator and JRB chairwoman, Heather McGuire, said in her deposition that the City's contiguity "discussion point was always focused around the northern portion of [the] pipeline."

7

¶ 23                              D. Judgment of the Circuit Court

¶ 24         The circuit court held a hearing on the parties' motions for summary judgment on February 15, 2019, before taking the matter under advisement. On March 28, 2019, the circuit court granted the City's, and denied the School Board's, motion for summary judgment. Regarding contiguity, the circuit court found there was "over 400 feet of contiguity" connecting parcels A and B and "well over 1000 feet of contiguity" connecting parcels B and C. Thus, contrary to the School Board's allegations, the circuit court found contiguity existed between the northwestern portion and the remainder of the TIF District. Even if there were only 234.9 feet of contiguity between parcels A and B (*i.e.*, between the northwestern portion and the remainder of the TIF District), the circuit court would have found that distance was sufficient under the case law, as the existence of the natural gas right-of-way was "of no legal consequence."

¶ 25         With respect to administrative support, the circuit court found the City "provided sufficient meeting space, clerical support, and notice of meetings and agendas." The circuit court also rejected the contention that the City "improperly closed the public hearing before the JRB concluded its work and further failed to satisfy the 'meet and confer' requirements," stating that the City

> "made reasonable efforts to conform to the JRB's recommendations, but the JRB's position lacked specificity. Moreover, [the City]'s counsel requested additional specificity, but did not receive it. If anything, the evidence suggests that the school board took an obstructionist position but [the City] did everything it was required to do, and everything that was reasonable to do. In short, [the City] complied with the TIF Act."

8

For these reasons, the circuit court granted the City's, and denied the School Board's, motion for summary judgment. The School Board filed a timely notice of appeal on April 25, 2019.

¶ 26                                                    II. ANALYSIS

¶ 27         On appeal, the School Board presents the same issues as it did in the circuit court. However, we address only the legal question of whether the parcels contained within this TIF District were contiguous, as required by statute. See *id.* § 11-74.4-4(a). Relevantly, section 11-74.4-4(a) states: "No redevelopment project area shall be designated unless a plan and project are approved prior to the designation of such area and such area shall include only those *contiguous* parcels of real property and improvements thereon substantially benefited by the proposed redevelopment project improvements." (Emphasis added.) *Id.*

¶ 28         In the past, our court recognized that the Act does not define "contiguous." See *Henry County Board v. Village of Orion*, 278 Ill. App. 3d 1058, 1067 (1996). We acknowledged that "[c]ontiguity has long been defined in annexation cases as tracts of land that touch or adjoin one another in a reasonably substantial physical sense." *Id.* (citing *Western National Bank of Cicero v. Village of Kildeer*, 19 Ill. 2d 342, 352 (1960), *disapproved of on other grounds by People ex rel. County of Du Page v. Lowe*, 36 Ill. 2d 372, 379-80 (1967); *accord Geisler v. City of Wood River*, 383 Ill. App. 3d 828, 848 (2008). After citing statutory interpretation principles, we found this definition "well suited to determine questions arising under the Act." *Henry County Board*, 278 Ill. App. 3d at 1067; *accord Geisler*, 383 Ill. App. 3d at 849. Another definition might "allow municipalities to circumvent the Act's legislative intent by creating TIF districts where physical eligibility may not otherwise exist." *Henry County Board*, 278 Ill. App. 3d at 1067; *accord Geisler*, 383 Ill. App. 3d at 849. Further, the touching requirement "ensures a municipality has properly

9

constructed a TIF district and is legitimately reaping tax increment financing benefits under the Act." *Henry County Board*, 278 Ill. App. 3d at 1067; accord *Geisler*, 383 Ill. App. 3d at 849.

¶ 29    Consistent with *Henry County Board*'s contiguity definition, we recognize "point-to-point touching or cornering is generally not sufficient to satisfy the requirement of contiguity." *La Salle Bank National Ass'n v. Village of Bull Valley*, 355 Ill. App. 3d 629, 637 (2005); accord *In re Annexation to the Village of Downers Grove*, 92 Ill. App. 3d 682, 685 (1981); see also *People ex rel. Freeport Fire Protection District v. City of Freeport*, 58 Ill. App. 3d 314, 317 (1978) (stating that validly annexed roads may lead to further annexations if the roads "form a new boundary with the next annexation, [and do] not merely touch it in the manner of a 'T' or at a corner"). As one court has noted, "point-to-point touching[ ] and cornering *** are merely a subterfuge to reach outlying areas." *People ex rel. Village of Long Grove v. Village of Buffalo Grove*, 160 Ill. App. 3d 455, 462 (1987).

¶ 30    Based upon the deposition testimony of Lindwall, "the only way" to get contiguity to parcel B from parcel A was by jumping the 234.9 foot portion of the natural gas right-of-way. Thus, this appeal boils down to one question—does the Act allow the City to "jump" the 234.9 foot portion of the natural gas right-of-way, located in the unincorporated "excluded area" of the TIF district, to establish contiguity between parcels A and B? For the reasons discussed below, we conclude the answer to this question is "no."

¶ 31    Initially, the circuit court, presumably in reliance on Will County maps contained in the record, found "over 400 feet of contiguity" connecting parcels A and B. In doing so, the circuit court failed to account for the difference between the boundaries of parcels A and B and the boundary of the TIF District. When this difference is considered, it becomes clear that this case turns on the City's inability to "jump" the 234.9 foot portion of the natural gas right-of-way.

10

¶ 32    We are not persuaded by the City's argument that "contiguous" has the same meaning under both section 11-74.4-4(a) of the Act, at issue here, and section 7-1-1 of the Illinois Municipal Code, pertaining to annexations. The City makes this argument because the first paragraphs of section 11-74.4-4(a) of the Act and section 7-1-1 of the Illinois Municipal Code both use the *Henry County Board* definition of "contiguity" for "contiguous." See 65 ILCS 5/11-74.4-4(a) (West 2016); *id.* § 7-1-1; *Henry County Board*, 278 Ill. App. 3d at 1067 (citing *Western National Bank of Cicero*, 19 Ill. 2d at 352); accord *Geisler*, 383 Ill. App. 3d at 849.

¶ 33    However, the City's position requires us to ignore the second sentence of section 7-1-1, which expands "contiguous" to mean, "*[f]or the purposes of [that] Article*[,] any territory to be annexed to a municipality *** notwithstanding that the territory is separated from the municipality by a *** public utility right-of-way." See 65 ILCS 5/7-1-1 (West 2016) (Emphasis added.); but *cf. id.* § 11-74.4-4(a). The City asks us to read this sentence into section 11-74.4-4(a) so it can establish contiguity between parcels A and B by "jumping" the natural gas right-of-way. This step would require a "depart[ure] from the plain language of [the] statute by reading into it exceptions, conditions, or limitations that the legislature did not express." See *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15. If our legislature intended "contiguous," as used in section 11-74.4-4(a), to include parcels separated by a public utility right-of-way, as in section 7-1-1 of the Illinois Municipal Code, it would have said so.

¶ 34    Since our legislature did not signal such an intention, we hold the City cannot "jump" the natural gas right-of-way to establish contiguity between parcels A and B.[3] Since there is no other

---

[3]It is telling, as the board notes, that section 11-74.4-4(q) of the Act expresses an intent to allow "one redevelopment project area" to "[u]tilize revenues *** received under [the] Act *** for eligible costs in another redevelopment project area that is: *** separated only by a public right of way," but does not express an intent to allow the establishment of one redevelopment project area with parcels separated only by a public right of way, such as a public utility right of way. See 65 ILCS 5/11-74.4-4(q) (West 2016).

basis for contiguity between those parcels, we also hold the TIF District is not contiguous under section 11-74.4-4(a).[4] Thus, we reverse the circuit court's contiguity finding and grant of summary judgment to the City.

¶ 35    By virtue of these holdings, we need not consider the School Board's issues pertaining to the Act's procedural requirements. However, we observe the City's casual approach towards its procedural obligations and the JRB. Respectfully, a more deliberate "come to the table" approach by the City under the Act could have avoided many of the issues present in this appeal.

¶ 36                                III. CONCLUSION

¶ 37    The judgment of the circuit court of Will County is reversed.

¶ 38    Reversed.

¶ 39    JUSTICE HOLDRIDGE, specially concurring:

¶ 40    The majority concludes that the City cannot "jump" the natural gas right-of-way to establish contiguity between parcels A and B. I believe we do not have to reach the issue as to whether the City can "jump" the gas right-of-way to establish contiguity because parcels A and B are physically separated by a parcel of land beyond the gas right-of-way that is excluded from the TIF district, therefore preventing contiguity.

¶ 41    The focus in this case is on the 234.9 foot natural gas right-of-way that exists on the border of parcel A and the parcel identified as "Utility." The "Utility" parcel is associated with property index number (PIN) 11-04-20-300-008-0000. The Will County Treasurer's office website states that the tax bill for this PIN is mailed to Natural Gas Pipeline. See Will County Treasurer, http://willtax.willcountydata.com/maintax/ccgis52?1104203000080000 (last visited July 22, 2020) [https://perma.cc/X2C6-AC33]. We may take judicial notice of the Will County website

---

[4]We expressly reject the notion that our holding invalidates any of the City's prior annexations.

12

because, as a government website, information contained therein is sufficiently reliable. See *Kopnick v. JL Woode Management Co.*, 2017 IL App (1st) 152054, ¶ 26. I note that referencing the "Utility" parcel as a right-of-way is a misnomer because it appears the utility company owns the parcel in fee simple.

¶ 42    Nonetheless, it is clear that the "Utility" parcel is excluded from the TIF District and has fee simple ownership separate from parcels A and B. Even if the City could "jump" the natural gas right-of-way that exists on the border of parcel A and the "Utility" parcel, the City cannot establish contiguity with the remaining land within the "Utility" parcel that stretches beyond the gas right-of-way up to parcel B. The discussion of "jumping" appears to be nothing more than a red herring.

**No. 3-19-0225**

| | |
|---|---|
| **Cite as:** | *Board of Education of Richland School District No. 88A v. City of Crest Hill*, 2020 IL App (3d) 190225 |
| **Decision Under Review:** | Appeal from the Circuit Court of Will County, No. 18-CH-19; the Hon. John C. Anderson, Judge, presiding. |
| **Attorneys for Appellant:** | Howard C. Jablecki, Gregory T. Smith, and Scott E. Nemanich, of Klein, Thorpe & Jenkins, Ltd., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Mary J. Riordan, of Mary Riordan, Ltd., of Chicago, and Scott M. Hoster, of Castle Law, of Joliet, for appellee. |