NOTICE

Decision filed 07/03/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-07-0142

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| RANDY GEISLER, MICHAEL VAN WINKLE, and STACEY M. CURTIS, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 04-CH-943 |
| THE CITY OF WOOD RIVER, ILLINOIS, an Illinois Municipal Corporation, and WOOD RIVER PARTNERS, LLC, | ) ) ) | |
| | ) | Honorable |
| Defendants-Appellees. | ) ) | Ralph J. Mendelsohn, Judge, presiding. |

_____

JUSTICE SPOMER delivered the opinion of the court:

The plaintiffs, Randy Geisler, Michael Van Winkle, and Stacey M. Curtis, appeal the order of the circuit court of Madison County that entered a judgment in favor of the defendants, the City of Wood River, Illinois (the City), and Wood River Partners, LLC (the developer), on the plaintiffs' second amended complaint (the complaint). The plaintiffs raise numerous issues on appeal, which we restate as follows: whether the circuit court erred when it determined that (1) the City complied with the procedural requirements set forth in the Tax Increment Allocation Redevelopment Act (the TIF Act)–section 11-74.4-4(j) of the Illinois Municipal Code (65 ILCS 5/11-74.4-4(j) (West 2004))–when it amended its "1986 Tax Increment Redevelopment Plan" (the 1986 TIF Plan); (2) the City did not violate the TIF Act–section 11-74.4-5(c) of the Illinois Municipal Code (65 ILCS 5/11-74.4-5(c) (West 2004))–when it adopted City Ordinance No. 1965 (approved August 16, 2004), which amended the 1986 TIF Plan, without convening a joint review board and conducting a public hearing; (3) the cost of replacing the existing Wal-Mart store with a Wal-Mart

1

Supercenter is a reimbursable "redevelopment project cost" as defined in the TIF Act–section 11-74.4-3(q) of the Illinois Municipal Code (65 ILCS 5/11-74.4-3(q) (West 2004)); (4) the City did not violate section 8-11-20 of the Illinois Municipal Code (65 ILCS 5/8-11-20 (West 2004)) when it entered into certain agreements with the developer; (5) "Business District No. 2," as set forth in the City's business district development plan (business district plan), met the requirements set forth in section 11-74.3-5 of the Illinois Municipal Code (65 ILCS 5/11-74.3-5 (West 2006)); and (6) the City did not violate the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. VII, §2) by imposing a new 1% sales tax in "Business District No. 2" (District 2) pursuant to section 11-74.3-3(12) of the Illinois Municipal Code (65 ILCS 5/11-74.3-3(12) (West 2006)) that it did not impose on "Business District No. 1" (District 1). For the reasons that follow, we affirm in part, reverse in part, and remand with directions that the circuit court, upon the amendment of the prayers for relief in count IV and count VI, grant the plaintiffs relief not inconsistent with this opinion.

FACTS

On September 7, 2005, the plaintiffs filed the complaint against the City and the developer in the circuit court of Madison County. The complaint alleged that the plaintiffs are City residents who pay property, sales, telecommunication, and utility taxes that are levied by the City. According to the complaint, the City adopted tax increment financing (TIF) in 1986 for an area within the City and designated as the "East Central TIF District." Pursuant to the TIF Act (Ill. Rev. Stat., 1986 Supp., ch. 24, par. 11-74.4-1 *et seq.*), the City adopted the 1986 TIF Plan for the East Central TIF District. A copy of the 1986 TIF Plan was attached to the complaint as "Exhibit A." One of the activities set forth in the 1986 TIF Plan was the construction of an 86,000-square-foot Wal-Mart store in an area designated in the 1986 TIF Plan was "Block 34," which is referred to elsewhere in the 1986 TIF Plan as

2

the "Wal-Mart Commitment Area." According to "Exhibit A-1" to the complaint, entitled "Blighting Factors: Block or Unit Summary," the only blighting factor present in that portion of the TIF district at the time the 1986 TIF Plan was adopted was a lack of community planning.

According to the complaint, in December 2003, the developer made a proposal to the City regarding the development of a regional shopping center to be known as Wood River Plaza. The proposal included, *inter alia*, the demolition of the existing Wal-Mart store, which had been constructed pursuant to the 1986 TIF Plan, and the construction of a new Wal-Mart Supercenter, a home improvement "big-box" store, and various outlots. On May 28, 2004, the city council of the City by ordinance approved a contract with the developer (original development agreement). The complaint alleged that the original development agreement, a copy of which is attached to the complaint as "Exhibit B," provides, *inter alia*, that the City will pay the developer from TIF funds to acquire land, demolish the existing Wal-Mart store, and construct the Wal-Mart Supercenter and that the City would annex and zone a certain 16.9-acre parcel of land known as the "North Property" for inclusion in the proposed development. The North Property is the only area of the proposed redevelopment that was not included in the TIF area established by the 1986 TIF Plan. In order to facilitate the development of the North Property, the original development agreement committed the City to establish a business district under division 74.3 of the Illinois Municipal Code (65 ILCS 5/11-74.3-1 *et seq.* (West 2004)) and to share sales tax revenues from the business district with the developer.

The complaint alleged that on June 21, 2004, the City annexed the North Property into the City in partial fulfillment of its obligations under the original development agreement. In August 2004, the City adopted Ordinance No. 1965, a copy of which is attached to the complaint as "Exhibit C." According to the complaint, Ordinance No. 1965

3

amended the 1986 TIF Plan to authorize the expenditures mandated by the original development agreement. In February 2005, in partial fulfillment of its obligations under the original development agreement, the City conducted public hearings regarding the development of a business district, pursuant to division 74.3 of the Illinois Municipal Code. On February 24, 2005, the City adopted the business district plan, a copy of which is attached to the complaint as "Exhibit D." The business district plan created District 1 and District 2. District 1 includes Block 34 under the 1986 TIF Plan, which was the area of the original Wal-Mart store and the area where the Wal-Mart Supercenter, a home improvement big-box store, and some outlots were proposed to be developed. District 2 includes the North Property, which is proposed to be developed into a strip center, a portion of Wesley Drive, and an area east of Wesley Drive, which the plaintiffs allege is noncontiguous. The business district plan stated that the City would impose a new 1% sales tax within District 2, with no new sales tax to be imposed in District 1.

According to the complaint, on July 5, 2006, pursuant to ordinance, the City approved, and the City and the developer subsequently executed, an amended development agreement, a copy of which is attached to the complaint as "Exhibit E." Simultaneously, the City approved, and the City and the developer executed, a business district agreement. The business district agreement is attached to the complaint as "Exhibit F." Under the terms of the business district agreement, the City pledges and agrees to apply the sales tax revenues imposed on District 2 to the reimbursement of the developer for reimbursable project costs incurred by the developer pursuant to the business district agreement.

Count I of the complaint alleges that the original and amended development agreements are illegal under the TIF Act. First, count I alleges that the City violated section 11-74.4-4(j) when it entered into the original development agreement with the developer before amending the 1986 TIF Plan, because the redevelopment project costs set forth in the

4

original development agreement were not consistent with the terms of the 1986 TIF Plan in many material respects. According to count I, the City's attempt to amend the 1986 TIF Plan pursuant to Ordinance No. 1965 after the original development agreement was executed was an illegal attempt to repair an illegal contract after the fact. Second, count I alleges that because the amendment of the 1986 TIF Plan pursuant to Ordinance No. 1965 added additional redevelopment project costs to those set forth in the 1986 TIF Plan, and substantially changed the nature of the redevelopment project, the City was required to convene a joint review board and conduct public hearings pursuant to the TIF Act–section 11-74.4-5 of the Illinois Municipal Code (65 ILCS 5/11-74.4-5 (West 2004)). Finally, count I alleges that the costs of demolishing the existing Wal-Mart store and constructing a Wal-Mart Supercenter on the same site are not reasonable or necessary "redevelopment project costs" as that term is defined in section 11-74.4-3(q).

Counts II and III of the complaint include allegations that are not relevant to the issues raised by the plaintiffs on appeal. Count IV of the complaint alleges that the City's business district plan and the business district agreement violate the division 74.3 of the Illinois Municipal Code. First, count IV alleges that because District 2 joins two noncontiguous parcels of land with a stretch of roadway, it violates the contiguity requirement set forth in section 11-74.3-5(2) of the Illinois Municipal Code (65 ILCS 5/11-74.3-5(2) (West 2006)). Second, count IV alleges that District 1 and District 2 are not "blighted" areas and so do not qualify for treatment as business districts under section 11-74.3-5(3) of the Illinois Municipal Code (65 ILCS 5/11-74.3-5(3) (West 2006)). Count IV prays that the circuit court enter an order declaring the business district plan and business district agreement illegal under division 74.3 of the Illinois Municipal Code, enjoining the City from expending public funds to carry out their terms, and awarding the plaintiffs court costs. Count IV includes no other prayer for relief.

5

Count V of the complaint alleges that the City violated the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. VII, §2) by imposing a new 1% sales tax in District 2 that it did not impose on District 1. Count VI of the complaint alleges that because the original development agreement and the business district agreement propose to share the City's 1% share of the Illinois general sales tax which is paid by the state to the City out of the Local Government Tax Fund in accordance with section 6z-18 of the State Finance Act (30 ILCS 105/6z-18 (West 2004)), these agreements qualify as "economic incentive agreements" under section 8-11-20 of the Illinois Municipal Code (65 ILCS 5/8-11-20 (West 2004)). Count VI alleges that because the City made none of the findings required by section 8-11-20 of the Illinois Municipal Code (65 ILCS 5/8-11-20 (West 2004)), the original development agreement and the business district agreement are void in their entirety. Count VI prays for an order declaring the original development agreement and the business district agreement as void and for a permanent injunction prohibiting the City from expending any public funds carrying out the terms, conditions, and aims of the original and amended development agreements.

On November 20 and 21, 2006, the circuit court held a bench trial on the complaint. At that time, all of the aforementioned documents were entered into evidence as stipulated exhibits. During the plaintiffs' case in chief, all of the plaintiffs testified that they are City residents who pay property, sales, and utility taxes. Nancy Schneider, director of finance for the City since 1997, was called to testify as an adverse witness. She testified that after the original Wal-Mart store was built pursuant to the 1986 TIF Plan, the City entered into a contract to reimburse the developer (which was different from the developer on the project at issue) for an expansion of that store in 1996, at a cost to the City of $300,000. This contract was entered into evidence as "Plaintiffs' Exhibit 1." Between the time the 1986 TIF Plan was adopted and the time of the 2004 trial, the City had spent $512,698 of TIF funds

6

on the Wal-Mart Commitment Area. This amount is reflected on "Stipulated Exhibit 8," which is a spreadsheet of the City's expenditures on the 1986 TIF Plan.

Nancy Schneider also testified regarding the foundation of "Plaintiffs' Exhibit 3," which is an e-mail from Nancy Schneider to the developer stating that the City needed justification that the areas stated in the business district development plan were blighted. The City hired Eric White of Planning Initiatives, LLC, to conduct a blight analysis. The blight analysis conducted by Mr. White was the only blight study that the City considered in approving the business district plan and business district agreement. According to an affidavit executed by Mrs. Schneider, admitted into evidence as "Plaintiffs' Exhibit 5," the amended development agreement was entered into for the purpose of resolving issues with the original development agreement that the plaintiffs claim render it void. Finally, Mrs. Schneider testified that the North Property, which is included in District 2, was vacant land at the time it was annexed and rezoned by the City. Mrs. Schneider did not know whether the land was in agricultural production at that time.

Eric White also testified as an adverse witness in the plaintiffs' case in chief. He testified that he was hired by the City as a consultant to conduct a blight analysis in connection with the creation of Districts 1 and 2. He had no involvement in the 1986 TIF Plan or the amendment in 2004 to expand the existing Wal-Mart store. At the time of the trial he had 20 years of experience with economic development consulting. He testified that unlike the blight analysis prepared in connection with the 1986 TIF Plan, he did not prepare a matrix, which is a block or unit summary of blighting factors. He testified that a matrix is only used when analyzing hundreds of parcels of land. Mr. White laid a foundation for "Plaintiffs' Exhibit 7," which consisted of aerial photographs of the property in question with his notes written on them.

Within District 2, Mr. White noted that Wesley Drive had deteriorated street

7

improvements, cracked and buckling pavement, and a lack of utilities, including an obsolete storm sewer system. Mr. White noted that Wesley Drive had been a county road and that it was later annexed by the City. According to Mr. White's testimony, Wesley Drive, as it was at the time of his blight analysis, was not fit to service a commercial development. Mr. White testified that the remaining portions of District 2 consisted of farm fields that had been previously undeveloped. As to the farm fields, Mr. White testified that the blighting factors present were topographical issues and inadequate sewers because there would have to be extensive grading and utility development on the farm fields to accommodate a commercial development. These were the only blighting factors Mr. White noted in District 2.

Within District 1, Mr. White testified that the existing Wal-Mart building and parking lot were deteriorating. The northern half of District 1, however, where the new Wal-Mart Supercenter was built, was vacant at the time of the analysis. Mr. White noted that the only blighting factor present in that area was a topographical problem causing storm sewer runoff in the area where the supercenter was to be built.

According to Mr. White, a blight analysis is to be conducted with regard to the business district as a whole, rather than on a parcel-by-parcel basis. On the basis of his study, he determined that the area as a whole was blighted and not meeting its economic potential. In addition to his blight analysis, Mr. White testified that he told the City that, in his opinion, District 2 is contiguous because it is contained within a single boundary. The northern tier of District 2 is connected to the eastern tier by a stretch of Wesley Drive. In addition, Mr. White opined that all areas of District 2 would benefit from the proposed development.

The plaintiffs called Daniel Schuering, an attorney licensed to practice law in Illinois, as their final witness during their case in chief. Mr. Schuering testified that he is

experienced in blight analysis and reviewed Mr. White's blight study. However, on the motion of the defendants, Mr. Schuering was prohibited from testifying regarding his opinion of the blight study conducted by Mr. White because his opinion had not been disclosed prior to the trial. In fact, Mr. Schuering had testified in his deposition that he had not visited the site and had not conducted a blight analysis. The plaintiffs do not appeal the circuit court's ruling excluding Mr. Schuering from testifying regarding his opinion of the blight analysis that had been conducted on behalf of the City. Mr. Schuering was allowed to testify, however, that, in his opinion, Ordinance No. 1965, which amended the 1986 TIF Plan, was a major amendment and therefore required public hearings and a convening of the joint review board in order to comply with the TIF Act.

Nancy Schneider was recalled as a witness during the defendants' case in chief. She testified that in December 2003, the City was approached by the developer with a proposal to build a 204,000-square-foot Wal-Mart Supercenter, three strip centers, and various outlots on the subject property. The City seriously considered the developer's proposal because the lease on the existing Wal-Mart store was soon expiring and the City had information that Wal-Mart was considering other locations. In addition, by the City's estimation, a new Wal-Mart Supercenter would double sales tax revenues for the City. Accordingly, the City hired Gene Norber as an economic development consultant to assist with the project. Mrs. Schneider testified that the City did not incur any costs under the original development agreement prior to the passing of Ordinance No. 1965, which amended the 1986 TIF Plan. Gene Norber had sent the City a memo explaining why the proposed amendment to the 1986 TIF Plan did not meet the statutory criteria for a major amendment. Based on that memo, the City decided to go forward with Ordinance No. 1965, which increased the amounts of certain line items in the 1986 TIF Plan but did not add items to the list or increase the total redevelopment project costs by more than 5% after inflation. Mrs. Schneider also pointed

9

out that the developer was not the same developer that had created and expanded the existing Wal-Mart store.

Nancy Schneider described the activities that had taken place on the subject property in furtherance of the amended development agreement and business district agreement. At the time of the trial, two strip centers had been built on the back portion of District 2 and were fully occupied. Wesley Drive, which was also a part of District 2, had been widened, and a turn lane, a stop light, and curb guttering had been installed at its intersection with Route 111. A new 1% sales tax had been imposed on District 2 to fund the improvement of Wesley Drive and various other public improvements. No corresponding sales tax was imposed on District 1 because District 1 was included in the 1986 TIF Plan, which was amended to include the needed expenditures.

Mrs. Schneider testified that she administers the business district plan. Pursuant to the business district agreement with the developer, the City set up a "Business District Incremental Sales Tax Fund" (business district fund). Mrs. Schneider testified that, at the time of the trial, only revenues collected on the new 1% sales tax that was imposed on District 2 pursuant to the business district plan had been placed into the business district fund. Revenues collected on the preexisting 1% sales tax imposed on all retailers by the City were placed into a different fund. In addition, at the time of the trial, only TIF funds had been used to reimburse the developer for project costs associated with the redevelopment activities in District 1.

Gene Norber testified that he is an independent economic development and planning consultant and the owner of Economic Development Resources. He has more than 20 years of experience creating TIF and business district plans. He was hired by the City to review the proposal for redevelopment created by the developer, the business district plan, the 1986 TIF Plan, and its proposed amendments, as well as the original and amended development

10

agreements. In his opinion, the original and amended development agreements were consistent with the objectives of the 1986 TIF Plan. Mr. Norber opined that the 1986 TIF Plan did not forbid clearance and demolition activities in areas of the TIF district other than the downtown area. He also testified that Ordinance No. 1965 was not a major amendment to the 1986 TIF Plan. Finally, he opined that District 2 is contiguous because it is surrounded by an unbroken perimeter line and Wesley Drive is an integral component of District 2 because it is needed to provide access to all areas in District 2. He did not conduct a blight analysis of District 1 and District 2.

On February 5, 2007, the circuit court entered a judgment in favor of the defendants on all counts of the complaint. The plaintiffs filed a timely notice of appeal. Additional facts necessary to the resolution of the individual issues raised on appeal will be set forth as needed throughout this opinion.

ANALYSIS

1. The Timing of the Amendment of the 1986 TIF Plan

We will first address the plaintiffs' argument that the circuit court erred when it determined that the City complied with the procedural requirements set forth in the TIF Act–section 11-74.4-4(j) of the Illinois Municipal Code (65 ILCS 5/11-74.4-4(j) (West 2004))–when it amended the 1986 TIF Plan. At the time that the City and the developer entered into the original development agreement, section 11-74.4-4(j) authorized a municipality to "[i]ncur project redevelopment costs and reimburse developers who incur redevelopment project costs authorized by a redevelopment agreement." 65 ILCS 5/11-74.4-4(j) (West 2004). However, section 11-74.4-4(j) further provided as follows:

> "[N]o municipality shall incur redevelopment project costs (except for planning costs and any other eligible costs authorized by municipal ordinance or resolution that are subsequently included in the redevelopment plan for the area and

11

are incurred by the municipality after the ordinance or resolution is adopted) that are not consistent with the program for accomplishing the objectives of the redevelopment plan as included in that plan and approved by the municipality until the municipality has amended the redevelopment plan as provided elsewhere in this Act." 65 ILCS 5/11-74.4-4(j) (West 2004).

The plaintiffs argue that because the City did not enact Ordinance No. 1965, which amended the 1986 TIF Plan to provide for the project costs set forth in the original development agreement, until after it entered into the original development agreement with the developer, the City violated section 11-74.4-4(j), resulting in the invalidation of the original development agreement. In addition, the plaintiffs argue that the amended development agreement, although executed after the enactment of Ordinance No. 1965, was void because it was an attempt to cure the illegality of the original development agreement after the fact. Because this issue involves statutory and contract interpretation and there is no question of fact to be resolved, we review the circuit court's resolution of this issue *de novo*. See *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 228 (2007); *Mermelstein v. Menora*, 372 Ill. App. 3d 407, 411 (2007) (citing *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005)).

After considering the above-referenced statutory language in light of the undisputed facts regarding the timing of the City's enactment of Ordinance No. 1965, we find the plaintiffs' argument to be without merit. As was noted by the circuit court in its order and judgment, the TIF Act includes a section separate from that which allows the City to incur project development costs, which gives the municipality the authority to "[m]ake and enter into all contracts with *** developers *** necessary or incidental to the implementation and furtherance of its redevelopment plan and project." 65 ILCS 5/11-74.4-4(b) (West 2004). This section does not include a restriction requiring a TIF plan to be amended prior to

12

entering into contracts that may be inconsistent with the program set forth in that plan. A municipality is only required to amend its TIF plan prior to "[i]ncur[ring] project redevelopment costs" that may be inconsistent with the program set forth in that plan. 65 ILCS 5/11-74.4-4(j) (West 2004).

The plain meaning of the word "incur" is "to become liable or subject to." Merriam-Webster's Collegiate Dictionary 632 (11th ed. 2006). Assuming that the project development costs set forth in the original development agreement were inconsistent with the 1986 TIF Plan before it was amended, the City was not liable to the developer for those costs until several conditions occurred under the terms of the original development agreement. First, pursuant to paragraph 11 of the original development agreement, the developer was required to substantially complete a phase of the project as set forth on the concept site plan. Second, the developer had to furnish to the City a certificate of substantial completion certifying that phase of the project is complete. Third, the City had to accept the certificate of substantial completion or follow the procedures set forth in paragraph 11 to contest the certificate. Fourth, any dispute regarding substantial completion had to be resolved. Fifth, pursuant to paragraph 12 of the original development agreement, the developer was required to provide the City with a certificate of reimbursable TIF project costs, detailing the TIF project costs incurred during that phase of construction, accompanied by copies of invoices, bills, and other evidence of the developer's payments for reimbursable TIF project costs. Because there is no evidence that any of the foregoing occurred prior to the City's amendment of the 1986 TIF Plan, we find that the circuit court did not err when it found that the City did not violate section 11-74.4-4(j).

2. The City's Method of Amending the 1986 TIF Plan

The plaintiffs next argue that the circuit court erred in determining that the City did not violate section 11-74.4-5(c) when it adopted City Ordinance No. 1965, which amended

13

the 1986 TIF Plan, without convening a joint review board and conducting a public hearing. Section 11-74.4-5(c) provides that a redevelopment plan may be amended under the terms of that section. 65 ILCS 5/11-74.4-5(c) (West 2004). Certain major amendments to a redevelopment plan may only be made after the municipality gives notice, convenes a joint review board, and conducts a public hearing. 65 ILCS 5/11-74.4-5(c) (West 2004). These amendments are as follows:

"(1) add additional parcels of property to the proposed redevelopment project area, (2) substantially affect the general land uses proposed in the redevelopment plan, (3)substantially change the nature of the redevelopment project, (4) increase the total estimated redevelopment project costs set out in the redevelopment plan by more than 5% after adjustment for inflation from the date the plan was adopted, (5) add additional redevelopment project costs to the itemized list of redevelopment project costs set out in the redevelopment plan, or (6) increase the number of inhabited residential units to be displaced from the redevelopment project area, as measured from the time of creation of the redevelopment project area, to a total of more than 10." 65 ILCS 5/11-74.4-5(c) (West 2004).

Here, the plaintiffs argue that because Ordinance No. 1965 increased the "land acquisition and clearance" line item in the 1986 TIF Plan from $1.5 million to $6 million, it was a major amendment that required a joint review board and public hearing. Because this issue is also a matter of statutory interpretation, we again employ a *de novo* standard of review. See *Murray*, 224 Ill. 2d at 228. After reviewing Ordinance No. 1965 in the context of the foregoing statutory language, we find that Ordinance No. 1965 did not constitute a major amendment. 65 ILCS 5/11-74.4-5(c) (West 2004). Ordinance No. 1965 simply increased several line items in the list of redevelopment project costs originally contemplated by the 1986 TIF Plan. The plaintiffs do not contend that these increases in specific line

14

items resulted in an increase in the total estimated redevelopment project costs by more than 5% after adjustment for inflation from the date the plan was adopted. The only evidence of the total increase was presented by the City's economic planning consultant, Gene Norber, who testified that he made the calculations and found that there was not such an increase.

In support of their argument that Ordinance No. 1965 constituted a major amendment to the 1986 TIF Plan, the plaintiffs direct this court to "Exhibit IV" to the 1986 TIF Plan, which consists of a map that shows that "land acquisition and clearance activities" were originally contemplated to take place in the downtown area only. When it adopted Ordinance No. 1965, the City increased the "land acquisition and clearance" line item to allow for this type of activity in the Wal-Mart store area. According to the plaintiffs, this change amounts to an addition to the itemized list of project development costs, which constitutes a major amendment. Alternatively, the plaintiffs claim that the increase in the "land acquisition and clearance" line item in the 1986 TIF Plan to facilitate this activity in the Wal-Mart Commitment Area constitutes a major amendment because it substantially changed the nature of the redevelopment project. See 65 ILCS 5/11-74.4-5(c)(3) (West 2004).

Pursuant to the TIF Act–section 11-74.4-4 of the Illinois Municipal Code, within a redevelopment project area, a municipality may acquire land and clear *any* area by demolition or removal of any existing buildings and structures. 65 ILCS 5/11-74.4-4(c), (d) (West 2004). If the legislature intended that a change in the project activity to take place within a portion of the redevelopment project area should constitute a major amendment requiring the convening of the joint review board and a public hearing, it could have clearly placed this type of amendment to a TIF plan in the itemized list of major amendments. It did not, and we decline to do so by judicial decision. In addition, we agree with the circuit court's holding that the amendment did not result in a substantial change in the nature of the

15

redevelopment project because the 1986 TIF Plan contemplated that the Wal-Mart Commitment Area was to be improved with a big-box retail operation from its commencement. Accordingly, the circuit court did not err when it determined that the City did not violate section 11-74.4-5(c) when it enacted Ordinance No. 1965 without convening the joint review board and holding a public hearing.

3. The Replacement of the Existing Wal-Mart Store as a "Redevelopment Project Cost"

We now address what the plaintiffs refer to as their "double dipping" theory. The plaintiffs argue that because TIF funds were used to construct and expand the Wal-Mart store in the first place, the use of TIF funds to demolish that store and erect a Wal-Mart Supercenter is not permitted. As support for its theory, the plaintiffs point to section 11-74.4-3(q), which defines "redevelopment project costs" as "the sum total of all reasonable or necessary costs incurred or estimated to be incurred, and any such costs incidental to a redevelopment plan and a redevelopment project" (65 ILCS 5/11-74.4-3(q) (West 2004)). According to the plaintiffs, the cost of demolishing the existing Wal-Mart store and replacing it with a Wal-Mart Supercenter does not fall within this definition because it was not a reasonable or necessary cost to fulfill the objectives of the 1986 TIF Plan. According to the plaintiffs, the building and expanding of the existing Wal-Mart store alleviated the blighting factor in Block 34, which was listed as "lack of community planning" in the 1986 TIF Plan.

The plaintiffs' argument can be characterized as both a legal issue and a factual issue. To the extent that the plaintiffs are requesting this court to find that, as a matter of law, the TIF Act does not permit the building, demolition, and rebuilding of a retail store on the same portion of a redevelopment area, our review is *de novo*. See *Murray*, 224 Ill. 2d at 228. In reviewing the TIF Act as a whole, we find no such prohibition. All of the activities that took place are authorized by section 11-74.4-3(q)(2), which authorizes the use of TIF funds for

16

acquisition, clearance, and demolition activities within the redevelopment area. 65 ILCS 5/11-74.4-3(q)(2) (West 2004). In addition, as the circuit court explained in its order, "the TIF Act contemplates a process of a number of years for the alleviation of adverse conditions in a redevelopment area." See 65 ILCS 5/11-74.4-3(n)(3) (West 2004). Finally, the 1986 TIF Plan made clear that the project activities specifically enumerated at the time the TIF district was created were not exclusive and specifically provided that "clearance and demolition activities to remove blighting influences may be accomplished in the future if determined by the City as being necessary to achieve the purposes of the Plan." We agree with the circuit court that the TIF Act does not prohibit a municipality from undertaking additional or alternative activities in a redevelopment area if a project activity is deemed insufficient to meet the plan's objectives.

To the extent that the plaintiffs' argument challenges the circuit court's factual determination that the demolition of the existing Wal-Mart store and the erection of the Wal-Mart Supercenter was a reasonable or necessary cost under the 1986 TIF Plan, we must evaluate whether this determination was against the manifest weight of the evidence. See *Knoob Enterprises, Inc. v. Village of Colp*, 358 Ill. App. 3d 832, 835 (2005) (holding that a trial court's judgment following a bench trial will not be disturbed unless it is against the manifest weight of the evidence). "We will find a trial court's judgment to be against the manifest weight of the evidence 'only when an opposite conclusion is apparent or when its findings appear to be unreasonable, arbitrary, or not based on the evidence.' " *Knoob Enterprises, Inc.*, 358 Ill. App. 3d at 835 (quoting *Cruthis v. Firstar Bank, N.A.*, 354 Ill. App. 3d 1122, 1134 (2004)).

Here, there is evidence in the record that the City found the demolition of the existing Wal-Mart store and the construction of a Wal-Mart Supercenter was reasonable and necessary because the lease on the existing Wal-Mart store was expiring and there was an

17

indication that Wal-Mart was considering moving to another location. Based on this evidence, as well as testimony from the City's expert witness regarding the deteriorating condition of the existing Wal-Mart store and the parking lot, the circuit court determined that the existing Wal-Mart store was not adequate to meet the economic needs of the redevelopment plan. Although, during cross-examination, the plaintiffs called into question the conclusions of the City's expert witness on the blighting factors found to be present in the Wal-Mart store area, they offered no direct evidence that would in any way challenge the evidence set forth by the City of the economic necessity of rebuilding the Wal-Mart store. Accordingly, we find that the circuit court's determination that the demolition of the existing Wal-Mart store and the construction of the Wal-Mart Supercenter was a reasonable and necessary "redevelopment project cost" was not against the manifest weight of the evidence.

4. The Applicability of Section 8-11-20 of the Illinois Municipal Code

We now turn to the plaintiffs' argument that the circuit court erred when it determined that the City did not violate section 8-11-20 of the Illinois Municipal Code (65 ILCS 5/8-11-20 (West 2004)) when it entered into certain agreements with the developer. According to the plaintiffs, the original development agreement, the amended development agreement, and the business district agreement all commit the City to pledge its 1% share of the Illinois general sales tax that is paid by the state to the City out of the Local Government Tax Fund in accordance with section 6z-18 of the State Finance Act (30 ILCS 105/6z-18 (West 2004)) in addition to new sales taxes imposed pursuant to division 74.3 of the Illinois Municipal Code, to reimburse the developer for redevelopment project costs. Thus, the plaintiffs argue that these provisions constitute "economic incentive agreements" and require compliance with section 8-11-20 of the Illinois Municipal Code. Because this issue presents questions of statutory and contract interpretation, our standard of review is *de novo*. *Murray*, 224 Ill. 2d at 228; *Mermelstein*, 372 Ill. App. 3d at 411 (citing *Avery*, 216 Ill. 2d at 129).

18

Section 8-11-20 of the Illinois Municipal Code (65 ILCS 5/8-11-20 (West 2004)) provides as follows:

"Economic incentive agreements. The corporate authorities of a municipality may enter into an economic incentive agreement relating to the development or redevelopment of land within the corporate limits of the municipality. Under this agreement, the municipality may agree to share or rebate a portion of any retailers' occupation taxes received by the municipality that were generated by the development or redevelopment over a finite period of time. Before entering into the agreement authorized by this Section, the corporate authorities shall make the following findings: ***."

A list of required findings follows this language in the statute. Here, it is undisputed that in approving the original development agreement, amended development agreement, and business district agreement, the City did not make any of the required findings. In concluding that those findings were unnecessary, the circuit court found that the agreements at issue do not call for sharing or rebating taxes. In addition, the circuit court found that because section 11-74.3-3 of the Illinois Municipal Code (65 ILCS 5/11-74.3-3 (West 2006)) provides explicit authority for the reimbursement of project development costs, without any limit on the source of funds, compliance with section 8-11-20 of the Illinois Municipal Code was not required.

After a careful review of the relevant statutory and contract language, we find that the contracts at issue do commit the City to pledge its 1% share of the Illinois retailers' occupation tax which is paid by the state to the City out of the Local Government Tax Fund in accordance with section 6z-18 of the State Finance Act, in addition to new sales taxes imposed pursuant to division 74.3 of the Illinois Municipal Code, to reimburse the developer for redevelopment project costs. The original development agreement, amended

19

development agreement, and business district agreement all include the following relevant language, which we quote from paragraph 11.3 of the business district agreement:

> "The City hereby pledges and agrees to apply the Business District Incremental Sales Tax Revenues from time to time credited to and deposited in the Business District Incremental Sales Tax Fund in accordance with this Agreement to the reimbursement of the Developer for Reimbursable Business District Project Costs incurred by the Developer pursuant to this Agreement."

The original development agreement, amended development agreement, and business district agreement all include the same definition of "Business District Incremental Sales Tax Revenues," which we quote from paragraph 1 of the business district agreement:

> " '*Business District Incremental Sales Tax Revenues*' means from the Commencement Date and continuing for a maximum period of twenty (20) years, fifty percent (50%) of all sales tax revenues which exceed the Base Tax Amount, *now collected or hereafter imposed by the City*, excluding therefrom any special assessment which may be imposed by Developer in the Business District, *pursuant to the Business District Act and such other authority as shall be applicable or any special statute*, each as amended from time to time, which revenues are attributable to the operation of the retail facilities constructed within the Business District each year." (Emphasis added.)

Under the plain language of these contractual provisions, the City is required to reimburse the developer for project costs from sales tax revenues attributable to operations in the business district that are collected or imposed pursuant to division 74.3 of the Illinois Municipal Code *and* any other applicable authority. This interpretation is supported by the City's business district plan, which provides that "funds necessary to pay for Project costs are to be solely derived from the revenues which the City is entitled to receive pursuant to

20

30 ILCS 105/6z-18 and such other authority as shall be applicable and any successor statute to the above, which revenues are derived from the Districts (the '*Incremental Sales Tax Revenues*')." (Emphasis in original.) We find that an agreement to pledge these revenues to reimburse the developer for project costs is, in effect, an agreement to "share" these revenues with the developer within the meaning of section 8-11-20 of the Illinois Municipal Code.

Having found that the agreements at issue do include provisions whereby the City agrees to share a portion of retailers' occupation taxes received by the City with the developer, we turn to section 11-74.3-3 of the Illinois Municipal Code to determine whether it provides authority for the City to enter into those agreements without complying with the requirements set forth in section 8-11-20 of the Illinois Municipal Code. Section 11-74.3-3 sets forth the powers the corporate authorities of each municipality shall have in carrying out a business district development or redevelopment plan. Subsection (9) of section 11-74.3-3 (65 ILCS 5/11-74.3-3(9) (West 2006)) gives municipalities the authority "[t]o expend public funds as may be necessary for the planning, execution[,] and implementation of the business district plans." In contrast, subsections (12) and (13) (65 ILCS 5/11-74.3-3(12), (13) (West 2006)) give the municipality the authority to impose a retailers' occupation tax, service occupation tax, or hotel operators' occupation tax on businesses within the district "for the planning, execution, and implementation of business district plans *and to pay for business district project costs as set forth in the business district plan approved by the municipality*." (Emphasis added.) In addition, subsection (14) (65 ILCS 5/11-74.3-3(14) (West 2006)) gives the municipality the authority to issue obligations bearing interest "*to provide for the payment of business district project costs.*" (Emphasis added.) Accordingly, the only explicit authority provided by section 11-74.3-3 for the payment of project costs is provided by imposition of the tax and the issuance of bonds provided for in that section.

21

Furthermore, even if we were to construe the language in subsection (9) to authorize the City to expend public funds for the payment of project costs irrespective of the omission of the specific language that is included in subsections (12), (13), and (14) specifically addressing project costs, we find that subsection (9) of section 11-74.3-3 does not supercede section 8-11-20. In other words, the two statutes are not mutually exclusive and can be read consistently. Pursuant to section 11-74.3-3(9), municipalities may authorize the expenditure of public funds "as may be necessary for the planning, execution[,] and implementation of the business district plans." 65 ILCS 5/11-74.3-3(9) (West 2006). However, if the expenditure of public funds will involve an agreement to share retailer occupation taxes collected by the City pursuant to section 6z-18 of the State Finance Act, the findings set forth in section 8-11-20 of the Illinois Municipal Code are required. This reading conforms with the well-established doctrine of *in pari materia*, which provides that two legislative acts that address the same subject or two sections of the same statute are considered with reference to one another, so they may be given harmonious effect. *Girard v. White*, 356 Ill. App. 3d 11, 17 (2005) (citing *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 422 (2002)).

For the foregoing reasons, we find that the City violated section 8-11-20 of the Illinois Municipal Code when it adopted those provisions of the original development agreement, amended development agreement, and business district agreement that obligated it to pledge its 1% share of the Illinois general sales tax paid by the state to the City out of the Local Government Tax Fund in accordance with section 6z-18 of the State Finance Act to reimburse the developer for project costs. However, we find that the relief requested by the plaintiffs in count VI of the complaint is an inappropriate remedy for that violation. In their prayer for relief, the plaintiffs request that the court enter an order declaring the business district agreement to be null and void, granting an injunction prohibiting the City

from expending *any* public funds with respect to carrying out the terms, conditions, and aims of the development agreement, and for the plaintiffs' costs of suit. This is the only prayer for relief in count VI. It would be inappropriate to grant that relief because there are numerous provisions in all three agreements that the City had authority to adopt without running afoul of section 8-11-20. However, we note that section 11-107 of the Illinois Code of Civil Procedure (735 ILCS 5/11-107 (West 2006)) provides that where the plaintiff has "established facts which entitle the plaintiff to [injunctive] relief but *** the plaintiff has sought the wrong remedy, the court shall permit the pleadings to be amended, on just and reasonable terms, and the court shall grant the relief to which plaintiff is entitled on the amended pleadings or upon the evidence." Accordingly, we reverse the judgment of the circuit court on count VI of the complaint, and we remand with directions that the circuit court, upon the amendment of the prayer for relief in count VI, grant the plaintiffs relief not inconsistent with this opinion.

   5. Whether the New Tax on District 2 Conforms With Section 11-74.3-5 of the
      Illinois Municipal Code

   We now turn to the plaintiffs' argument that the circuit court erred in entering a judgment in favor of the defendants on count IV of the complaint on the basis that District 2, as set forth in the City's business district plan, met the requirements in section 11-74.3-5 of the Illinois Municipal Code (65 ILCS 5/11-74.3-5 (West 2006)). Section 11-74.3-5 mandates additional procedures for the designation of a business district and the approval of a development or redevelopment plan if the corporate authorities of a municipality desire to impose a tax pursuant to subsection (12) or (13) of section 11-74.3-3. 65 ILCS 5/11-74.3-5 (West 2006). In order to impose that tax on a business district, "[t]he area proposed to be designated as a business district must be contiguous and must include only parcels of real property directly and substantially benefited by the proposed business district development

23

or redevelopment plan."  65 ILCS 5/11-74.3-5(2) (West 2006).

Here, the plaintiffs argue that District 2 is not contiguous within the meaning of section 11-74.3-5.  The issue of contiguity is a mixed question of law and fact.  *Henry County Board v. Village of Orion*, 278 Ill. App. 3d 1058, 1067 (1996).  "Thus, to the extent that factual disputes are present, the trial court's decision will not be disturbed unless contrary to the manifest weight of the evidence."  *Henry County Board*, 278 Ill. App. 3d at 1067.  Here, the circuit court found that District 2 is contiguous because it is surrounded by a single boundary.  In addition, the circuit court found that although a strip of Wesley Drive joins the North Property with the otherwise noncontiguous area south of the North Property and east of Wesley Drive to form District 2, Wesley Drive provides contiguity because it is an integral part of District 2 and substantial improvements to Wesley Drive are a major element of the business district plan.  Because Wesley Drive has been improved throughout District 2, the circuit court found contiguity despite a strip of Wesley Drive being the only connection between the two parcels.

The plaintiffs do not dispute the aforementioned factual determinations that were made by the circuit court.  Rather, the plaintiffs argue that these facts are irrelevant to a determination of contiguity within the meaning of section 11-74.3-5.  Because the issue presented by the plaintiffs actually presents a question of law involving statutory construction and there are no factual disputes, our standard of review is *de novo*.  *Henry County Board*, 278 Ill. App. 3d at 1068.

Contiguity is not defined by division 74.3 of the Illinois Municipal Code.  However, "[c]ontiguity has long been defined in annexation cases as tracts of land that touch or adjoin one another in a reasonably substantial physical sense."  *Henry County Board*, 278 Ill. App. 3d at 1067 (citing *Western National Bank of Cicero v. Village of Kildeer*, 19 Ill. 2d 342, 352 (1960)).  Illinois courts have found this definition of contiguity to be well-suited to

24

determine whether a TIF district is contiguous within the meaning of the TIF Act. See *Henry County Board*, 278 Ill. App. 3d at 1067. We find no reason to depart from this well-established definition of contiguity when determining whether a business district is contiguous within the meaning of section 11-74.3-5. As explained in *Henry County Board* with regard to the TIF Act, another definition of contiguity may allow municipalities to circumvent the legislative intent of section 11-74.3-5 by creating a business district with the intent of imposing a special tax on that district where physical eligibility may not otherwise exist. 278 Ill. App. 3d at 1067. In addition, "imposing a substantial physical-touching requirement upon a municipality to establish contiguity ensures a municipality has properly constructed a [business] district and is legitimately reaping *** benefits under the Act." *Henry County Board*, 278 Ill. App. 3d at 1067.

Having determined that "contiguity" as used in section 11-74.3-5 means an actual physical touching or adjoining of property in a reasonably substantial physical sense, we note that contiguity is determined from the facts of each case. *In re Incorporation of a Village to be Known as the Village of Mitchell*, 316 Ill. App. 3d 284, 290 (2000). However, this court has held that "a narrow 'strip' of land used to connect a parcel with the rest of the territory is *** not sufficient to meet the requirement of contiguity." *In re Incorporation of a Village to be Known as the Village of Mitchell*, 316 Ill. App. 3d at 290. In this case, the length of Wesley Drive provides the only connection between the two parcels of land composing District 2. Accordingly, we find that District 2 is noncontiguous as a matter of law.

In addition to meeting the contiguity requirement, the City was required to make a formal finding of the following in order to impose a tax on District 2 pursuant to subsection (12) and/or (13) of section 11-74.3-3:

"(3) *** (i) [T]he business district is a blighted area that, by reason of the

25

predominance of defective or inadequate street layout, unsanitary or unsafe conditions, deterioration of site improvements, improper subdivision or obsolete platting, or the existence of conditions which endanger life or property by fire or other causes, or any combination of those factors, retards the provision of housing accommodations or constitutes an economic or social liability or a menace to the public health, safety, morals, or welfare *in its present condition and use ***.*" (Emphasis added.)  65 ILCS 5/11-74.3-5(3)(i) (West 2006).

The City's business district plan states that the City made a formal finding that District 1 and District 2 are blighted in accordance with the study conducted by Eric White. We note that because the City has not imposed a tax on District 1 pursuant to subsection (12) and/or (13) of section 11-74.3-3, an analysis of the City's finding of blight in District 1 as that term is used in section 11-74.3-5 is not ripe for review at this time. Accordingly, our analysis of the City's finding of blight as that term is used in section 11-74.3-5 is limited to District 2.

Because the findings of blight in District 2 were approved by city ordinance, a presumption exists that the City's findings of blight are valid. See *Board of Education, Pleasantdale School District No. 107 v. Village of Burr Ridge*, 341 Ill. App. 3d 1004, 1012 (2003). Accordingly, it was the plaintiffs' burden to overcome this presumption by clear and convincing evidence. See *Reed-Custer Community Unit School District No. 255-U v. City of Wilmington*, 253 Ill. App. 3d 503, 508 (1993). On appeal, the circuit court's finding that the plaintiffs did not meet their burden will not be set aside unless clearly contrary to the manifest weight of the evidence. See *Reed-Custer Community Unit School District No. 255-U*, 253 Ill. App. 3d at 508.

We have reviewed the record in light of the requirements set forth in section 11-74.3-5 for making a formal finding of blight. The plaintiffs' examination of the City's expert, Eric White, as an adverse witness made clear that District 2 consists of farm fields and a portion

26

of Wesley Drive that was a county road prior to its annexation by the City for the redevelopment project at issue. The blighting factors cited by Eric White in these areas, including inadequate utilities and grading issues, were clearly based on Mr. White's perception of the ability of these areas to service a commercial development. This is insufficient to find blight under section 11-74.3-5, which requires a finding that District 2 "constitute[] an economic or social liability or a menace to the public health, safety, morals, or welfare *in its present condition and use*" (emphasis added) (65 ILCS 5/11-74.3-5(3)(i) (West 2006)).

Because the foregoing is readily apparent from the plaintiffs' adverse examination of the City's expert witness, it is of no consequence that the plaintiffs failed to present a contrary expert opinion. "[A]n expert's opinion is only as valid as the basis and reasons for that opinion." *Board of Education, Pleasantdale School District No. 107*, 341 Ill. App. 3d at 1013. " 'When there is no factual support for an expert's conclusions, his conclusions alone do not create a question of fact.' " *Board of Education, Pleasantdale School District No. 107*, 341 Ill. App. 3d at 1013 (quoting *Wilson v. Bell Fuels, Inc.*, 214 Ill. App. 3d 868, 875-76 (1991)). For all of these reasons, we find the circuit court's finding that plaintiffs did not meet their burden to overcome the presumption of validity of the City's finding of blight in District 2 to be against the manifest weight of the evidence.

Although we find that the circuit court erred in its determination that District 2 met the requirements set forth in section 11-74.3-5, the relief requested by the plaintiffs in count IV of the complaint is an inappropriate remedy for this violation. In their prayer for relief, the plaintiffs request that the court enter an order declaring the entire business district plan and business district agreement to be null and void, granting an injunction prohibiting the City from expending *any* public funds with respect to carrying out the terms, conditions, and aims of the development agreement, and for their costs of suit. This is the only prayer for

27

relief in count IV. It would be inappropriate to grant that relief, because section 11-74.3-5 only applies to the ability of the City to impose the taxes on a business district that are permitted to be imposed under subsections (12) and (13) of section 11-74.3-3. The business district plan, business district agreement, original development agreement, and amended development agreement all include numerous provisions that do not relate to the new 1% sales tax imposed on District 2. However, we again note that section 11-107 of the Illinois Code of Civil Procedure (735 ILCS 5/11-107 (West 2006)) provides that where the plaintiff has "established facts which entitle the plaintiff to [injunctive] relief, but *** the plaintiff has sought the wrong remedy, the court shall permit the pleadings to be amended, on just and reasonable terms, and the court shall grant the relief to which plaintiff is entitled on the amended pleadings or upon the evidence." Accordingly, we reverse the judgment of the circuit court on count IV of the complaint, and we remand with directions that the circuit court, upon the amendment of the prayer for relief in count IV, grant the plaintiffs relief not inconsistent with this opinion.

6. The Constitutionality of the Tax on District 2 Imposed Pursuant to Division 74.3

Finally, the plaintiffs argue that the circuit court erred when it determined that the City did not violate the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. VII, §2) by imposing a new 1% sales tax in District 2 pursuant to section 11-74.3-3(12) of the Illinois Municipal Code (65 ILCS 5/11-74.3-3(12) (West 2006)) that it did not impose on District 1. The Illinois Supreme Court has made clear that " 'cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort.' " *People v. Hampton*, 225 Ill. 2d 238, 243-44 (2007) (quoting *In re E.H.*, 224 Ill. 2d 172, 178 (2006)). Because we have addressed the merits of the imposition of the new 1% tax on District 1 on other grounds, we decline to address this issue.

28

CONCLUSION

For the reasons set forth above, we find that the circuit court did not err when it determined that the City complied with the procedural requirements set forth in the Tax Increment Allocation Redevelopment Act–section 11-74.4-4(j) of the Illinois Municipal Code (65 ILCS 5/11-74.4-4(j) (West 2004))–when it amended its 1986 TIF Plan. The circuit court did not err when it determined that the City did not violate section 11-74.4-5(c) (65 ILCS 5/11-74.4-5(c) (West 2004)) when it adopted City Ordinance No. 1965 without convening a joint review board and conducting a public hearing. In addition, the circuit court did not err when it determined that the cost of replacing an existing Wal-Mart store with a Wal-Mart Supercenter is a reimbursable "redevelopment project cost" as defined in section 11-74.4-3(q) (65 ILCS 5/11-74.4-3(q) (West 2004)).

We find that the circuit court did err when it found that the City did not violate section 8-11-20 of the Illinois Municipal Code (65 ILCS 5/8-11-20 (West 2004) when it entered into certain provisions of the original and amended development agreements and the business district agreement which require it to pledge its 1% share of the Illinois general sales tax which is paid by the state to the City out of the Local Government Tax Fund in accordance with section 6z-18 of the State Finance Act (30 ILCS 105/6z-18 (West 2004)) to reimburse the developer for project costs. Accordingly, we reverse the order of the circuit court that entered a judgment in favor of the City on count VI of the complaint. In addition, the circuit court did err in its determination that District 2, as set forth in the City's business district development plan, met the requirements set forth in section 11-74.3-5 of the Illinois Municipal Code (65 ILCS 5/11-74.3-5 (West 2004)). Accordingly, we reverse the order of the circuit court that entered a judgment in favor of the City on count IV of the complaint. Because the applicable rules provide that the plaintiffs may amend their prayers for relief, we remand this cause with directions that the circuit court, upon the amendment of the

29

prayers for relief in count IV and count VI, grant the plaintiffs relief not inconsistent with this opinion.

Because we addressed the merits of the imposition of a new 1% sales tax in District 2 pursuant to section 11-74.3-3(12) of the Illinois Municipal Code (65 ILCS 5/11-74.3(12) (West 2006)) that the City did not impose on District 1 on other grounds, we find it unnecessary and improper to reach the issue of whether the circuit court erred when it determined that the tax did not violate the uniformity clause of the Illinois Constitution (Ill. Const. 1970, art. VII, §2). For all of these reasons, we affirm in part, reverse in part, and remand with directions that the circuit court, upon the amendment of the prayers for relief in count IV and count VI, grant the plaintiffs relief not inconsistent with this opinion.

Affirmed in part and reversed in part; cause remanded with directions.

STEWART, P.J., and WELCH, J., concur.

NO. 5-07-0142

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| RANDY GEISLER, MICHAEL VAN WINKLE, and STACEY M. CURTIS, | ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | No. 04-CH-943 |
| THE CITY OF WOOD RIVER, ILLINOIS, an Illinois Municipal Corporation, and WOOD RIVER PARTNERS, LLC, | ) ) ) ) | |
| | ) | Honorable Ralph J. Mendelsohn, |
| Defendants-Appellees. | ) | Judge, presiding. |

---

**Opinion Filed**: July 3, 2008

---

**Justices**:  Honorable Stephen L. Spomer, Justice

Honorable Bruce D. Stewart, Presiding Justice
Honorable Thomas M. Welch, Justice
Concur

---

**Attorneys for Appellants**  John M. Myers, Rabin, Myers & Hanken, P.C., 1300 South Eighth Street, Springfield, IL 62703; Robert W. Bosslet, Jr., Terrence V. O'Leary, Bosslet & O'Leary, Ltd., 1406 Niedringhaus Avenue, P.O. Box 519, Granite City, IL 62040

---

**Attorneys for Appellees**  Merle C. Bassett, Bassett Law Office, P.C., 16 West Lorena Avenue, Wood River, IL 62095; James E. Mello, Jeffery McPherson, Armstrong Teasdale LLP, One Metropolitan Square, Suite 2600, St. Louis, MO 63102-2740